Don Springmeyer, Esq.
Nevada Bar No. 1021
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

*Attorneys for Plaintiff Brielle Meagher*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BRIELLE MEAGHER, individually, and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>TELUS INTERNATIONAL (U.S.) CORP.,<br><br>     Defendant. | Case No.:   2:20-cv-02074-RFB-DJA<br><br>**RENEWED JOINT MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS AND COLLECTIVE ACTION SETTLEMENT** |

Plaintiff Brielle Meagher ("Plaintiff") and Defendant TELUS International (U.S.) Corp. ("Defendant") (Plaintiff and Defendant are referred to herein collectively as "the Parties"), by and through their attorneys of record, have reached a Revised Joint Stipulation of Settlement and Release ("Settlement") of this Fair Labor Standards Act ("FLSA") collective action and Rule 23 of the Nevada Rules of Civil Procedure ("Rule 23"), which is filed contemporaneously herewith.  As set forth below, the Parties' Settlement is fair and reasonable and was reached as a result of contested litigation to resolve *bona fide* disputes between them.  Accordingly, the Parties seek an Order from the Court preliminarily approving the Parties' Settlement.

/ / /

/ / /

This Motion is based on the following Memorandum of Points and Authorities, all exhibits attached hereto, and any oral argument this Court may order.

DATED this 24th day of October, 2023.

BROWN, LLC

 /s/ Nicholas R. Conlon
Nicholas R. Conlon (*admitted pro hac vice*)
Zijian Guan (*admitted pro hac vice*)
Jason T. Brown (*admitted pro hac vice*)
111 Town Square Place, Suite 400
Jersey City, NJ  07310


KEMP JONES, LLP

 /s/ Don Springmeyer
Don Springmeyer, Esq. Nevada Bar No. 1021
3800 Howard Hughes Pkwy, 17th Floor
Las Vegas, Nevada 89169

*Attorneys for Plaintiff*

DATED this 24th day of October, 2023.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

 /s/ Anthony L. Martin
Anthony L. Martin, Esq. Nevada Bar No. 8177
Dana B. Salmonson, Esq. Nevada Bar No. 11180
10801 W. Charleston Blvd., Suite 500
Las Vegas, Nevada 89135

*Attorneys for Defendant*

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. - 1 -

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................... - 2 -

III. SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS ...................................... - 5 -

    A.  The Recovery ........................................................................................... - 5 -

    B.  The Release ............................................................................................. - 7 -

    C.  The Settlement Process ............................................................................ - 9 -

IV. ANALYSIS ................................................................................................... - 10 -

    A.  Approval of the Settlement under Rule 23(e) ............................................ - 10 -

        1.  All Four Criteria of FRCP 23(a) Are Met .......................................... - 11 -

        2.  The Criteria of FRCP 23(b)(3) Are Met ............................................ - 14 -

        3.  The Proposed Settlement Is Fair, Reasonable and Adequate ................. - 14 -

        4.  The Notice Plan Should Be Approved ................................................ - 23 -

        5.  Class Counsel Should Be Appointed ................................................. - 23 -

    B.  Approval of the Settlement Under the FLSA ............................................. - 24 -

V.  CONCLUSION ............................................................................................. - 26 -

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377 (C.D. Cal. 2007) ........................................ - 15 -

*Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367 (D. Nev. 2018) ............................- 24 -, - 25 -

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) ........................................- 10 -, - 12 -

*Brown v. Tetra Tech., Inc.*, No. 2:20-cv-01133-DJC-DMC, 2023 U.S. Dist. LEXIS 109308 (E.D. Cal. June 23, 2023) ........................................................................................................ - 17 -

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018).................................................. - 25 -

*Clark, et al. v. Bank of America Corporation*, No. 2:16-cv-02228-GMN-VCF ........................ - 23 -

*Dixon v. Cushman & Wakefield W., Inc.*, No. 18-cv-05813-JSC, 2021 U.S. Dist. LEXIS 164001 (N.D. Cal. Aug. 30, 2021) ...................................................................................... - 19 -

*Foster v. Advantage Sales & Mktg., LLC.*, No. 18-CV-07205-LB, 2019 U.S. Dist. LEXIS 213734, 2019 WL 6699793 (N.D. Cal. Dec. 9, 2019)....................................................... - 19 -

*Gonzalez-Rodriguez v. Mariana's Enters.*, 2016 U.S. Dist. LEXIS 92198, 2016 WL 3869870 (D.Nev. July 14, 2016) .......................................................................................... - 24 -

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ..........................- 12 -, - 13 -, - 14 -

*Howard v. Southwest Gas Corporation*, No.: 2:18-cv-01035-JAD-VCF .................................... - 23 -

*Howard v. Web.com Grp. Inc.*, 2020 U.S. Dist. LEXIS 256933 (D. Ariz. Sep. 18, 2020) ......... - 16 -

*In re Activision Securities Litigation,* 723 F. Supp. 1373 (N.D. Cal. 1989).....................- 20 -, - 21 -

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1994) .............................. - 21 -

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018)........................................................................................................ - 18 -, - 19 -

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d 1053 (N.D. Cal. 2007)- 12 -

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935 (9th Cir. 2011) ........................................................................................................................ - 15 -

*Koehl v. Verio,* 142 Cal. App. 4th 1313 (2006).......................................................................... - 22 -

*League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984) .......................... - 22 -

1    *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d

2        1152 (9th Cir) .......................................................................................................... - 14 -

3    *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ............................... - 24 -

4    *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-SVW-MRW, 2023 U.S. Dist. LEXIS 25130

5        (C.D. Cal. Feb. 13, 2023) ........................................................................................... - 18 -

6    *Martinez v. Knight Transp., Inc*., No. 1:16-cv-01730-SKO, 2023 U.S. Dist. LEXIS 160285 (E.D.

7        Cal. Sep. 8, 2023) ...................................................................................................... - 20 -

8    *Millan v. Cascade Water Services, Inc*., 310 F.R.D. 593 (E.D. Cal. 2015) ................................ - 24 -

9    *Minor v FedEx Office & Print Servs. Inc*., No. C09-1375 TEH, 2013 U.S. Dist. LEXIS 18224,

10        2013 WL 503268 (N.D. Cal. Feb. 8, 2013) .............................................................. - 19 -

11   *Molski v. Gleich,* 318 F.3d 937 (9th Cir. 2003) ........................................................................ - 15 -

12   *Nur v. Tatitlek Support Servs*., No. 15-CV-00094 SVW (JPRx), 2016 U.S. Dist. LEXIS 74296

13        (C.D. Cal. Apr. 25, 2016) ........................................................................................... - 19 -

14   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........................................................... - 14 -

15   *Priyanka Khanna v. Intercon Sec. Sys*., 2014 U.S. Dist. LEXIS 48647, 2014 WL 1379861

16        (E.D.Cal. April 8, 2014) ............................................................................................. - 25 -

17   *Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEXIS 124017 (D. Ariz. July 24, 2019) ..... - 16 -

18   *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist.

19        LEXIS 84976 (N.D. Cal. Oct. 22, 2008) .......................................................- 11 -, - 12 -

20   *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) ...........................................- 17 -, - 18 -

21   *Selk v. Pioneers Mem'l Healthcare Dist*., 159 F. Supp. 3d 1164 (S.D. Cal. 2016) ................... - 22 -

22   *Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003)* .................................................................. - 13 -

23   *Trout v. Meggitt-USA Servs*., No. 2:16-cv-07520-ODW(AJW), 2018 U.S. Dist. LEXIS 64672

24        (C.D. Cal. Apr. 17, 2018) ........................................................................................... - 19 -

25   *Turner v. Concentrix Servs. US, Inc*., 2023 U.S. Dist. LEXIS 5117 (W.D. Ark. Jan. 11, 2023) - 16 -

26   *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977) ................................................ - 20 -

27   *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005) ...........................- 12 -, - 14 -

28

**Statutes**

29 U.S.C. § 216(b) ............................................................................... - 17 -, - 26 -

42 U.S.C. § 2000e ................................................................................. - 2 -, - 8 -

Fed. R. Civ. P. 23 ...................................................................................... - 11 -

Fed. R. Civ. P. 23(a) ................................................................................. - 11 -

Fed. R. Civ. P. 23(b)(3) ......................................................... - 3 -, - 11 -, - 14 -

Fed. R. Civ. P. 23(e) ................................................................................. - 10 -

Fed. R. Civ. P. 23(g) ................................................................................. - 23 -

Nevada Rules of Civil Procedure ........................................................... passim

NRS § 608.016 ............................................................................................ - 2 -

NRS § 608.018 ............................................................................................ - 2 -

NRS § 608.260 ............................................................................................ - 2 -

NRS § 613.330 ................................................................................... - 3 -, - 8 -

NRS § 613.340 ................................................................................... - 3 -, - 8 -

Title VII of the Civil Rights Act of 1964 .......................................... - 2 -, - 8 -

**Other Authorities**

*Manual for Complex Litigation (Fourth)* § 21.632 (2004) ................... - 10 -, - 14 -, - 15 -

*Newberg on Class Actions* § 14:6 (4th ed. 2008) ................................... - 21 -

## I.    **INTRODUCTION**

The parties respectfully seek preliminary approval of their Revised Joint Stipulation of Settlement and Release ("Settlement") [ECF No. 55] which provides for a total payment of $1.4 million which will be made available to pay the claims of 3,154 collective and class members based on Plaintiff's claims under the FLSA and Nevada Revised Statutes.

The Settlement is the same as the one previously submitted for preliminary approval, [ECF No. 42-2], but differs in that it provides, subject to Court approval:

(i)    for an increase in the portion of the Net Settlement Find allocated to the Nevada State Law Settlement Fund from 10% to 20%;

(ii)    for a corresponding decrease in the portion of the Net Settlement Find allocated to the FLSA Settlement Fund from 90% to 80%;

(iii)    that 100% of the Nevada State Law Settlement Fund will be paid to Rule 23 Settlement Subclass member who does not opt-out of the Rule 23 Class, with no funds reverting to or remaining with Defendant;

(iv)    that at least 50% of the FLSA Settlement Fund will be paid to Participating FLSA Collective Subclass Members, regardless of how many submit Claim Forms;

(v)    that Defendant will only keep 50% of any funds apportioned to FLSA Collective Subclass members who do not submit timely, valid Claim Forms, with the other 50% distributed as a *cy pres* donation to Nevada Legal Services;

(vi)    for an increase in the deadline for Class Members to submit Claim Forms, Exclusion/Opt-Out Forms, and/or objections from 30 to 60 days;

(vii)    for the Claims Administrator to mail Class Members a Reminder Notices 30 days after the initial Notices; and

(viii)    for the Claims Administrator to prepare a case website that Class Members can visit to view the Notice and submit Claim Forms and Request for Exclusion/Opt-Out Forms, with an agreed-upon means to ensure the authenticity of any electronically-submitted forms.

Further, this Motion includes the information the Court requested at the hearing denying the prior motion for preliminary approval, including the steps the Claims Administrator will take to

- 1 -

ensure Class Members receive the Notice and can easily participate if they so choose, and their estimate regarding the anticipated claims rate, *see* Exhibit 1, Declaration of Desirae Burton Regarding Administration ("Butler Decl."), as well as further detail regarding how the proposed individual settlement payments compare to their potential recoveries based on the claims asserted in this case.

Accordingly, for the reasons set forth herein, the Parties respectfully request that the Court: (1) preliminarily approve the Settlement as fair, reasonable, and adequate; (2) conditionally certify the FLSA Collective Subclass and Rule 23 Settlement Subclass for settlement purposes only; (3) approve their proposed Notice to be disseminated to collective and class members pursuant to the Settlement Agreement; (4) appoint Brown, LLC and Kemp Jones, LLP as Class Counsel; (5) appoint Simpluris, Inc. as the Claims Administrator; and (6) schedule a fairness hearing to consider final approval of the proposed Settlement, approval of requested attorneys' fees, costs, and the Enhancement Award and Individual Claims Award to Plaintiff.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed a Complaint against Defendant in the United States District Court, District of Nevada on November 12, 2020.  The Complaint is brought on behalf of a putative nationwide FLSA collective and Nevada Rule 23 class of hourly-paid call center agents who were allegedly not paid for time spent starting up and logging to various computer systems and applications before their shifts and/or upon returning from their meal breaks ("Log-in Claim"), and/or received a rate of pay for overtime hours that did not incorporate call center agents' non-base compensation, such as "Employee Appreciation" bonuses and shift differentials ("Overtime Rate Claims"), in violation of the FLSA and of NRS 608.016, 608.018 and NRS 608.260. (ECF No. 4 at ¶¶ 7-8.  Defendant disputes and denies Plaintiff's claims and asserts that it properly paid Plaintiff and class members' overtime under the FLSA and Nevada law.  Defendant also disputes that it did not properly calculate its employees' regular rates of pay.

In addition, Plaintiff asserted individual claims for (a) hostile work environment/sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, (b) gender discrimination in violation of Title VII, (c) retaliation in violation of Title VII, (d) hostile work

environment/sexual harassment in violation of NRS § 613.330, (e) gender discrimination in violation of NRS § 613.330, (f) retaliation in violation of NRS § 613.340, (g) constructive discharge, (h) intentional infliction of emotional distress, and (i) negligent retention, supervision and training of supervisors and managers. Defendant disputes the allegations contained in the Complaint in their entirety.

Following the filing of this Action, the Parties engaged in extensive discussions and informal discovery regarding their respective positions and the information and data needed to properly evaluate the merits of the Log-in Claim and Overtime Rate Claim. *See* Exhibit 2, Declaration of Nicholas R. Conlon ("Conlon Decl."), ¶ 3. Defendant's counsel provided Class Counsel with copies of its pay and timekeeping policies and de-identified time and payroll data for the putative collective and class members who were hired before January 1, 2020, with subsequently hired employees excluded on the basis of having signed arbitration agreements. *Id*. ¶ 4. Further, Defendant's counsel represented, and its records substantiated, that excluding employee hires on or after January 1, 2020 the putative nationwide collective covered 3,154 call center agents who worked in Nevada or Texas, with 1,964 of those persons falling within the putative Nevada class. *Id*. Class Counsel also conducted detailed interviews with Plaintiff and over a dozen opt-in plaintiffs regarding their potential claims under the FLSA and Nevada Revised Statutes. *Id*.

Based on this information, Class Counsel estimated that call center agents' base hourly rates were, on average, $15.51 per hour, they typically worked five (5) shifts per week, and they spent an average of 5.6 unpaid minutes per shifts starting up and logging to various computer systems and applications before their shifts and/or upon returning from their meal breaks. *Id*. ¶ 5. Using the payroll data provided from Defendant, Class Counsel calculated that a 5.6 unpaid minutes per day would equate to roughly $832,823.00 in overtime wages potentially recoverable under the FLSA's maximum three-year recovery period, with the potential for an equal amount in liquidated damages in the event of Defendant's inability to establish a good faith defense, plus an additional $147,187 in non-overtime wages potentially owed to Nevada Class Members under Nevada law for hours worked up to forty (40) in a workweek that were allegedly not paid according to the Log-in Claim. *Id*. Further, Class Counsel estimated that Defendant had

approximately in $56,000 in total exposure to the putative collective for the Overtime Rate Claim, bringing its total exposure on the Log-in Claim and Overtime Rate Claim to $1,868,833. *Id.*

Class Counsel also investigated and accounted for Defendant's defenses, which included that Plaintiffs would fail to establish that Defendant knew of or permitted any off the clock work, fail to overcome Defendant's showing that its written timekeeping policies mandated reporting of all time worked, fail to show that Defendant willfully violated the FLSA (thus limiting the recovery to a 2-year period), and that Defendant would establish that the pre-shift work allegedly performed off the clock is *de minimis* and thus not-compensable; and that its action were taken in good faith (thus limiting the recovery to actual wage damages), as well as the possibility of Defendant successfully opposing conditional certification and/or moving for decertification. *Id.* ¶ 6.

Following extensive discussions regarding the strengths of their respective positions, the Parties reached a proposed class action settlement through arms-length negotiations with the assistance of retired federal Judge Philip Pro at a mediation held on July 1, 2021. *Id.* ¶ 9.  The parties moved for preliminary approval of their settlement on February 11, 2022. (ECF No. 32). On September 28, 2022, the Court held a hearing and denied the motion for preliminary approval without prejudice. (ECF No. 45).  The Court found the proposed thirty-day claim period to be insufficient to notify class members, disapproved of any unclaimed funds reverting back to Defendant, and directed the Parties to "provide a new proposal for the disbursement of any unclaimed funds." (*Id.*) The Court also instructed the Parties to provide more information on the proposed claim/disbursement process, including how the claims administrator will contact class members about the claims process and how much a class member will be compensated in relation to any alleged damages or lost wages. (*Id.*)

The Parties then proceeded to negotiate in hopes of agreeing on a set of modifications to the settlement that would best satisfy the Court's concerns, and worked with the Administrator to compile the information requested by the Court. These efforts resulted in the proposed Settlement and the Motion now before the Court.

1

III.    **SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS**

2

The Parties' Settlement provides for significant monetary recovery on behalf of the Class

3

and, with the exception of the named Plaintiff's release, releases only those claims alleged or

4

related to the Complaint, as well as sets forth the legally-appropriate mechanism for providing

5

notice to the Class of the terms and conditions of the Settlement.

6

**A. The Recovery**

7

The Settlement provides for a maximum settlement amount of One Million Four Hundred

8

Thousand and Zero Cents ($1,400,000.00).  *See* Settlement, ¶ 9. Out of that amount, the following

9

approximate breakdown applies:

10

* Approximately $850,677.70[1] in estimated settlement funds to the Class broken

11

down as follows:

12

  * Eighty percent (80%) of the estimated settlement funds shall be apportioned

13

    amongst the members of the FLSA Collective Subclass ("FLSA Settlement

14

    Fund") and individual shares thereof shall be distributed to members of the

15

    FLSA Collective Subclass who submit timely, valid Claim Forms.

16

  * Twenty percent (20%) of the Net Settlement Fund shall be apportioned to

17

    the Nevada State Law Settlement Fund and individual shares thereof shall be

18

    distributed to all Rule 23 Class Members who do not opt out of the Class,

19

    with no portion thereof reverting to or remaining with Defendant;

20

* An estimated $37,655.63 in settlement administration costs;

21

* $10,000.00 Enhancement Award to named Plaintiff for her participation in the

22

  lawsuit;

23

* $15,000.00 in Individual Claims Award to the named Plaintiff in exchange for the

24

  dismissal of her individual claims and her general release of claims;

25

* $466,666.67 in attorney's fees (1/3 of the maximum settlement amount); and

26

27

28

[1] The net settlement amount (defined herein) is subject to depending on the amounts ultimately sought and awarded for attorney's fees, litigation costs, administration costs, the Enhancement Award, and the Individual Claims Award.

- Up to $20,000.00 in actual costs.

Settlement at ¶¶1(l), 1(o), 10(d), 11, 12; Ex. 2 at ¶10. Settlement Awards for each FLSA Collective Subclass member and Rule 23 Settlement Subclass member will be allocated from the Net Settlement Amount and paid as follows: one-half (1/2) will be allocated to alleged unpaid wages for which IRS Forms W-2 will issue and one-half (1/2) will be allocated to alleged unpaid penalties and interest for which IRS Forms 1099-MISC will issue. Settlement at ¶ 10(f). Each Class Member who receives a Settlement Award shall pay his/her share of payroll taxes from the one-half (1/2) of the Settlement Award allocated to alleged unpaid wages. *Id.* Accordingly, each Settlement Award will be reduced by applicable payroll tax withholdings and deductions. *Id.* Defendant shall pay the normal employer's portion of payroll taxes separately, as calculated by the Claims Administrator. *Id.*

Settlement Awards to the FLSA Collective Subclass will be determined by the Claims Administrator according to their Qualifying Workweeks within the time period covered by the FLSA Collective Subclass. *Id.* at ¶ 10(e)(i). Defendant will provide the Claims Administrator with the excel spreadsheet setting out the total number of Qualifying Workweeks for each FLSA Collective Subclass member during the FLSA Collective Subclass Period. *Id.* The Claims Administrator shall assign to each FLSA Collective Subclass member a "Settlement Ratio" which shall be a percentage of the total Qualifying Workweeks worked by all FLSA Collective Subclass members in the FLSA Collective Subclass Period and the total Qualifying Workweeks in the FLSA Collective Subclass Period for each individual FLSA Collective Subclass member. *Id.* The Claims Administrator shall then assign to each FLSA Collective Subclass member a "Settlement Award" which shall be calculated by multiplying that Subclass Member's Settlement Ratio by the FLSA Settlement Amount. *Id.* If the Court finally approves the Settlement, the Claims Administrator would distribute a Settlement Award to each person who falls within the FLSA Collective Subclass who submits a timely, valid Claim Form within 60 days after days after the Court-approved notice

proposed herein, and/or who previously filed consent forms in the Action that were not withdrawn.[2] *Id.*

Similar to the Settlement Awards to the FLSA Collective Subclass, Settlement Awards to the Rule 23 Settlement Subclass will be determined by the Claims Administrator according to their Qualifying Workweeks within Rule 23 Settlement Subclass Period. *Id.* at ¶ 10(e)(ii). Defendant will provide the Claims Administrator with the excel spreadsheet setting out the total number of Qualifying Workweeks for each Rule 23 Settlement Subclass member during the Rule 23 Settlement Subclass Period. *Id.* The Claims Administrator shall assign to each Rule 23 Settlement Subclass member a "Settlement Ratio" which shall be a percentage of the total Qualifying Workweeks all Rule 23 Settlement Subclass members in the Rule 23 Settlement Subclass Period and the total Qualifying Workweeks in the Rule 23 Settlement Subclass Period for each individual Rule 23 Settlement Subclass member. *Id.* The Claims Administrator shall then assign to each Rule 23 Settlement Subclass a "Settlement Award" which shall be calculated by multiplying that Class Member's Settlement Ratio by the Nevada State Law Settlement Fund. *Id.* The Claims Administrator will distribute a payment of a Settlement Award to each Rule 23 Settlement Subclass member who does not opt-out of the Rule 23 Class. *Id.*

Defendant will only keep 50% of any funds apportioned to FLSA Collective Subclass members who do not submit timely, valid Claim Forms and/or to Class Members who opt out of the Class, with the other 50% distributed as a *cy pres* donation to Nevada Legal Services. Settlement, at ¶ 10(d).

**B. The Release**

The Settlement provides that, upon final approval by the Court, Plaintiff and the Class Members will release claims as follows:

---

[2] To address the Court's disapproval of unclaimed funds reverting back to Defendant, (ECF No. 45), the parties have added a provision to the Settlement that "[i]f the total value of the Settlement Awards attributable to the Participating FLSA Collective Subclass Members is less than fifty percent (50%) of the amount of the FLSA Settlement Fund, the difference shall be added to the Settlement Awards of all Participating FLSA Collective Subclass Members on a pro rata basis according to their Settlement Ratios." Settlement, at ¶ 10(e)(i). Thus, the Participating FLSA Collective Subclass Members will receive at least half of the FLSA Settlement Fund, with 50% of any unreceived portion being distributed *cy pres* to Nevada Legal Services.

1.  <u>FLSA Collective Subclass Members</u>:  Class Representative and each FLSA Collective Subclass member who submits a timely and valid Claim Form in exchange for the consideration recited in this Agreement shall fully and finally release and discharge Defendant and the Released Parties from any and all wage and hour claims arising under the FLSA, whether known or unknown, arising during the FLSA Collective Subclass Period, and which arose out of or could have arisen out of the facts alleged in this lawsuit.

2.  <u>Rule 23 Settlement Subclass Members</u>:  Class Representative and each Rule 23 Settlement Subclass Member who do not submit a timely and valid Request for Exclusion/Opt-Out Form shall fully and finally release and discharge Defendant and the Released Parties from any and all applicable local and state law wage-and-hour claims (including, but not necessarily limited to, contractual or common law claims, waiting time penalty claims, claims arising under the Nevada Revised Statutes or Administrative Code Chapter 608 and the Nevada Constitution) asserted in or that could have been asserted in this dispute and rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising during the Rule 23 Settlement Subclass Period, and which arose out of or could have arisen out of the facts alleged in this lawsuit.

3.  <u>Class Representative</u>: Subject to Court approval, in exchange for her Individual Claims Award, the Class Representative shall knowingly and voluntarily release and forever discharge Defendant and the Released Parties of and from any and all claims, known and unknown, asserted or unasserted, which the Class Representative has or may have against Defendant and the Released Parties as of the date of execution of this Agreement including, but not limited to, all of her individual claims asserted in this Action for (a) hostile work environment/sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, (b) gender discrimination in violation of Title VII, (c) retaliation in violation of Title VII, (d) hostile work environment/sexual harassment in violation of NRS § 613.330, (e) gender discrimination in violation of NRS § 613.330, (f) retaliation in violation of NRS § 613.340, (g) constructive discharge, (h) intentional infliction of emotional distress, and (i) negligent retention,

supervision and training of supervisors and managers, as well as other potential claims referenced in the Settlement.

**C. The Settlement Process**

If the Court preliminarily approves the Settlement, Defendant will provide the Claims Administrator with the Class Member Data, and the Administrator will run a check of the Class Members' last known address against those on file with the U.S. Postal Service's National Change of Address List, Settlement, at ¶ 14(c)(i) and then mail the Notice to the Class Members. There will be two different Notices—one for those individuals who fall within both the FLSA Collective Subclass and the Rule 23 Settlement Subclass, and one for individuals who only fall within the FLSA Collective Subclass. Each version of the two Notices is set forth in Exhibit A to the Settlement. *Id.* at ¶ 14, n. 1. In addition to the Notice, the Claims Administrator will include in the mailing to all Class Members a Claim Form and business reply mail return envelope addressed to the Administrator, and shall also include the Request for Exclusion/Opt-Out Form with the mailing to each Rule 23 Settlement Subclass Member. *Id.* at ¶ 14(c)(i). Further, the Administrator prepare a case website that Class Members can visit to view the Notice and submit Claim Forms and Request for Exclusion/Opt-Out Forms, with an agreed-upon means to ensure the authenticity of any electronically-submitted forms. *Id.* at ¶ 14(b).

Once mailed, any notices that are returned with a forwarding address will be mailed to such address. For those without forwarding addresses, the Administrator will attempt to find a forwarding address using Accurint, a reputable research tool owned by Lexis-Nexis. Butler Decl. ¶ 7. Within thirty (30) days are the mailing of Notices, the Claims Administrator will send a Reminder Notice by first class mail to the Class Members who have not yet submitted Claim Forms or Request for Exclusion/Opt-Out Forms. Settlement, at ¶ 14(a), Ex. D. Class Members will have sixty (60) calendar days from the date of the Claims Administrator's initial mailing of the Notice in which to postmark or electronically transmit Claim Forms, requests for exclusion, or to file objections to the Stipulation of Settlement. *Id.* at ¶ 14(c)(i).

There are a total of 3,154 Class Members who will receive the Notices if the Settlement is preliminarily approved, 400 of whom were employed by Defendant as of August 17, 2023. Butler

Decl. ¶¶ 3, 6. Simpluris estimates that the Notices will be successfully mailed to 90% of the Class Members, (i.e. 2,893), that a total of 1,103 Class Members will submit timely, valid Claim Forms, and that these 1,103 Class Members worked a total of 111,074.40 qualifying workweeks, *id.* at ¶¶ 10-11, thus entitling them to be paid 88.23% of the FLSA Settlement Fund, i.e. $600,457.58.

The Settlement further provides that following the notice period the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement. *Id.* at ¶19(a).  (Attached as **Exhibit D** to the Settlement Agreement is a proposed Order granting preliminary approval of the Settlement.  Attached as **Exhibit E** to the Settlement Agreement is a proposed Order granting final approval of the Settlement.)  The Notices advise class members about the fairness hearing and their opportunity to attend the hearing and make their views known.  *Id.* at ¶ 14.  At the fairness hearing, the Parties will address any issues raised by class members or the notice process itself, and the Court will have an opportunity to review the Settlement with the benefit of knowing the Class Members' reaction to the Settlement, which the Parties expect will be positive.

## IV.    <u>ANALYSIS</u>

### A. Approval of the Settlement under Rule 23(e)

Fed. R. Civ. P. 23(e) provides that settlement of the claims of a certified class is subject to court approval.  In general, settlement of class actions is favored as a matter of "strong judicial policy."  *See Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages.  *See Alberto,* 252 F.R.D. at 658.  At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing" and authorizes notice of the proposed class settlement to be given to the class.  *Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) (*"Manual for Complex Litigation")* (summarizing "preliminary fairness review").  Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it, and the court reaches a final

determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Id.* at 659 (citations omitted).

Because this is the first stage of the Court's evaluation of the Settlement, the Parties submit that (A) the subclass should be certified, (B) the Settlement should be preliminary deemed fair, reasonable, and adequate, and (C) notice should be sent out as set forth in the Settlement.

To facilitate the proposed Settlement, the Parties respectfully request that the Court conditionally certify the following settlement subclass pursuant to FRCP 23: all persons who worked for Defendant in the positions of Operations CSR, Operations CSR II, Operations CSR III, Operations CSR IV, Operations CSR V, Operations CSR VI, Operations Technical Support Rep, Operations Technical Support Rep II, Operations Technical Support Rep III, Operations Technical Support Rep IV, and/or Travel Counselor at Defendant's call centers in Las Vegas, Nevada at any time within the period of November 12, 2018 through July 1, 2021, who performed work off the clock prior to the beginning of their scheduled shift in excess of 40 hours in a given workweek, and/or who were paid an improper rate of overtime pay for hours worked in excess of 40 in a given workweek, excluding any employees who were hired to work in California at any time in the Rule 23 Settlement Subclass Period and who signed binding arbitration agreements and class action waivers, and further excluding employees who were hired by Defendant on or after January 1, 2020 and who signed binding arbitration agreements and class action waivers. Settlement at ¶ 1(z). The Parties agree that, for purposes of settlement only, the criteria for certifying the Class under FRCP 23(a) and FRCP 23(b)(3) are satisfied in this case and the proposed Class should be certified for purposes of the Settlement.

1. <u>All Four Criteria of FRCP 23(a) Are Met</u>

**FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *See Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the Rule 23 Settlement Subclass consists of approximately 1,964 individuals. *See* Butler Decl. ¶ 5.

Plaintiff submits that the numerosity criterion is satisfied. For purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion that sufficient numerosity exists.

*FRCP 23(a)(2): There are questions of law or fact common to the Class.* The commonality requirement is construed liberally. *See Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact, but need not be identical. *See Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Here, all Rule 23 Subclass Members are all persons who worked for Defendant in the positions of Operations CSR, Operations CSR II, Operations CSR III, Operations CSR IV, Operations CSR V, Operations CSR VI, Operations Technical Support Rep, Operations Technical Support Rep II, Operations Technical Support Rep III, Operations Technical Support Rep IV, and/or Travel Counselor at Defendant's call centers in Las Vegas, Nevada at any time within the period of November 12, 2018 through July 1, 2021, who performed work off the clock prior to the beginning of their scheduled shift in excess of forty (40) hours in a given workweek, and/or who were paid an improper rate of overtime pay for hours worked in excess of forty (40) in a given workweek, excluding employees who were hired by Defendant on or after January 1, 2020 and who signed binding arbitration agreements and class action waivers. Under Nevada law, all non-exempt employees are entitled to be compensated for all overtime for all hours worked over forty (40) hours in a workweek and are entitled to the appropriate rate for overtime pay. Given this legal foundation, Plaintiff and the Rule 23 Subclass Members assert common factual and legal questions which include whether Class Members were compensated for all hours they worked at the appropriate legal rate pursuant to Nevada law. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602,607 (C.D. Cal. 2005). Based on these common issues, this criterion is

met.  For purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion that sufficient commonality exists.

> **FRCP 23(a)(3):  The claims or defenses of the representative parties are typical of the claims or defenses of the class.**  Like commonality, the typicality standard is applied "permissive[ly]."  *See Staton*, 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020).  It is satisfied if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'"  *Id.*  Here, the named Plaintiff is a former employee who was employed by Defendant as a call center agent.  *See* Complaint at ¶ 3.  She further alleges Defendant did not pay her and similarly-situated employees for their time spent starting up their computers, logging into required systems and applications, and reviewing work-related e-mails and other information before their shifts and upon returning from their meal breaks.  *Id.* at ¶ 7. Plaintiff asserts that she and other call center agents were also victims of Defendant's policy of failing to incorporate their non-base compensation into their regular rates of pay for purposes of calculating their hourly overtime rates.  *Id.*, ¶ 8.  Thus, her claims are typical to those of the Class. For purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion that sufficient typicality exists.

> **FRCP 23(a)(4): The representative parties will fairly and adequately protect the interests of the class.**  Courts have interpreted this requirement as posing two questions:  (1) whether either the named plaintiff or his counsel has any conflicts of interest with other class members, and (2) whether the named plaintiff and his counsel will vigorously prosecute the action on behalf of the class.  *See id.* (citing *Hanlon* and other cases).  Here, neither the named Plaintiff nor her counsel have interests antagonistic to those of other Class Members.  On the contrary, the named Plaintiff shares with absent Class Members an interest in recovering compensation that Defendant allegedly denied them.  In addition, Plaintiff's counsel has extensive experience in wage and hour class actions, as well as class action litigation more generally, and the proposed settlement was reached only after arm's-length direct settlement discussions.  *See* Conlon Decl. ¶¶ 12-16.  Thus, the named Plaintiff and Plaintiff's counsel are adequate representatives of the Class.  For purposes of approving this Settlement, Defendant does not oppose such assertion.

2.   <u>The Criteria of FRCP 23(b)(3) Are Met</u>

To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class and that a class action is the superior method for fairly and efficiently adjudicating the controversy.  FRCP 23(b)(3).  Both criteria are met here.  For purposes of approving this Settlement, Defendant does not oppose such assertion.

***The predominance requirement is met***.  The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

Plaintiff argues that common issues of law and fact predominate, and Defendant does not oppose this argument for purposes of settlement approval.

***The superiority requirement is met.***  Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims.  *See Wang v. Chinese Daily News, Inc.*, 231 F.R.D. at 614.  This case involves multiple claims, some for relatively small individual sums.  If Plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.  *See Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985).  In such a situation, the superiority requirement is "easily satisfied."  *Id.*  Plaintiff avers that the same holds true here.  Defendant does not oppose such a finding for purposes of settlement approval.

3.   <u>The Proposed Settlement Is Fair, Reasonable and Adequate</u>

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may

weigh in determining whether a settlement is fair, reasonable, and adequate.  Fairness calls for a comparative analysis of the treatment of class members *vis-a-vis* each other and *vis-a-vis* similar individuals with similar claims who are not in the class.  Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.  *Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out."  *See Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377,386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating.  *See Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632.  "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing.  *Id.,* § 21.633 at 321. Here, all three are preliminarily met.

The "presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. 2011).

**Fairness of Relief to Class Members.**  The monetary relief provided under the Settlement is fair, both in with respect to its proportion to Class Counsel's estimated $1,868,833 in total damages for the Log-in Claims and Overtime Rate Claims, and how it will be allocated amongst the Class Members, i.e. based on their Qualifying Workweeks within the Rule 23 Settlement Subclass Period.

The Net Settlement Fund is estimated to be $850,677.70, which is 46% of Class Counsel's estimate of total damages (including liquidated) available to the Class Members and 84% of the actual wage damages. *See* Conlon Decl. ¶ 12.

The Claims Administrator estimates that 111,074.40 out of 125,888.68 qualifying workweeks will have been claimed by FLSA Collective Subclass members, Burton Decl. ¶¶ 4, 11, which means that the total value of the Settlement Awards attributable to the Participating FLSA Collective Subclass Members will be 88.23% of the FLSA Settlement Fund. This would result in Participating FLSA Collective Subclass Members receiving roughly $5.41 per Qualifying Workweek from the FLSA Settlement Fund, plus an additional $10.52 per Qualifying Workweek from the Nevada State Law Settlement Fund (for members of the Rule 23 Settlement Subclass), for a total of $15.93 per Qualifying Workweek, which equates to 13.94 unpaid minutes per week during overtime hours and 7.68 unpaid minutes during non-overtime hours.[3] *See* Conlon Decl. ¶ 13. Thus, the proposed recovery is fair both in light of Class Counsel's prior determination that the opt-in plaintiff surveyed worked an average of 5.6 unpaid minutes per day (which equates to 28 minutes over the course of a 5-shift week), and when compared with settlements approved in other FLSA call center cases.  *See Turner v. Concentrix Servs. US, Inc.*, 2023 U.S. Dist. LEXIS 5117 (W.D. Ark. Jan. 11, 2023) (approving settlement that provided recovery of approximately 35 minutes of off-the-clock work performed per week using the average hourly base rate of pay of all plaintiffs); *Howard v. Web.com Grp. Inc.*, 2020 U.S. Dist. LEXIS 256933, at *15 (D. Ariz. Sep. 18, 2020) (approving settlement that provided recovery of approximately 15 to 20 minutes of unpaid start-up time for each week worked); *Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEXIS 124017, at *9 (D. Ariz. July 24, 2019) (approving settlement that provided recovery of about 5 minutes of unpaid work per day, or 25 minutes of unpaid time per week).

**Fairness of Settlement funds potentially remaining with Defendant.** The Court denied the prior motion for preliminary approval in part due to disapproval of "any unclaimed funds reverting back to Defendant." [ECF No. 45] The Parties have attempted to address this concern by

---

[3] In this scenario, Defendant would pay $600,457.58 of the $680,542.16 FLSA Settlement Fund, and would only keep $40,042.29, with the remaining portion distributed *cy pres*. *Id.*

revising the Settlement to provide that the Participating FLSA Collective Subclass Members will receive at least half of the FLSA Settlement Fund and that Defendant will only keep 50% of any funds apportioned to FLSA Collective Subclass members who do not submit timely, valid Claim Forms, with the other 50% distributed as a *cy pres* donation to Nevada Legal Services. Settlement, at ¶ 10(d). Thus, the maximum portion of the $680,542.16 FLSA Settlement Fund that would remain with Defendant is $170,135.54 (12.15% of the Maximum Settlement Amount). *See* Conlon Decl. ¶ 14.

The Parties are mindful of the Court's disapproval of "any unclaimed funds reverting back to Defendant." (ECF No. 45. The Parties were unable to agree on a revised settlement that strictly meets that parameter, but respectfully submit that the modifications they have made will significantly reduce the likelihood and the amount of any unclaimed funds remaining with Defendant, and are sufficient for the Court to at least preliminarily approve the Settlement while reserving ultimate judgment on the issue until the final approval stage, at which point the Court will then be informed of the claims rate and the amount of any unclaimed funds.

While it is likely that some portion of the FLSA Settlement Fund will be unclaimed, this is due to the fact that the Class Members can only release their FLSA claims if they affirmatively elect to join the case. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Brown v. Tetra Tech., Inc*., No. 2:20-cv-01133-DJC-DMC, 2023 U.S. Dist. LEXIS 109308, at *17 (E.D. Cal. June 23, 2023) ("Courts require a separate opt-in procedure for FLSA claims when the settlement includes both Rule 23 and FLSA claims."). The Parties respectfully submit that is fair for Defendant's ultimate pay-out under the Settlement to be at least somewhat tied to the extent to which Defendant gets the benefit of releases of the Class Members' FLSA claims, especially in light of the efforts contemplated in the Settlement to ensure Class Members receive the Notices and can easily opt in if they so choose.

While the Ninth Circuit has "not disallowed reversionary clauses outright," it does "generally disfavor them because they create perverse incentives." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058 (9th Cir. 2019) (citing *In re Volkswagen "Clean Diesel" Mktg., Sales*

*Practices, & Prods. Liab. Litig*., 895 F.3d 597, 611-12 (9th Cir. 2018)). "That is not to say that a reversionary clause can never reasonably be included in a settlement; in some cases, the reversionary clause may provide articulable benefits to the class, and any concerns about perverse incentives or collusion may be ameliorated by other aspects of the settlement." *Id.* at 1059. "[C]ourts routinely provide preliminary approval for claims-made settlements that contain a reversion," and reason that "concern[s] about a potential windfall to [defendants] may be mitigated by the amount of class members that submit a claim." *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-SVW-MRW, 2023 U.S. Dist. LEXIS 25130, at *23 (C.D. Cal. Feb. 13, 2023).

Here, the Settlement does not create any perverse incentives, and any concerns thereof are ameliorated by the adequacy of the monetary relief and the efficacy of the proposed notice and claims process, which the Parties hope, and the Claims Administrator has projected, will generate a high claims rate that will further ameliorate any such concerns at the final approval stage. Because Defendant will only obtain a release of FLSA claims from Class Members who have already opted in and/or submit Claim Forms, it "retains an incentive to ensure a high claims rate." *SFBSC Mgmt*., 944 F.3d at 1058, n.21. Thus, the Settlement does not implicate the Ninth Circuit's concern regarding "allowing unclaimed funds to revert to defendants even where class members who do not respond or submit a claim are bound by the class release…." *Id.* at 1058.

Further, the Settlement does not contain "a subpar notice process, a more tedious claims process, or restrictive claim eligibility conditions," *id.* at 1059, and has been equipped with numerous safeguards to prevent Defendant's potential retention of unclaimed portions of the FLSA Settlement Fund from becoming a windfall, including an increase in the non-reversionary Nevada State Law Settlement Fund from 10% to 20% of the Net Settlement Fund, an increase in the claims period from 30 to 60 days, and the requirement that at least 50% of the FLSA Settlement Fund will be paid to Participating FLSA Collective Subclass Members, regardless of how many submit Claim Forms, with Defendant only keeping 50% of remaining funds and the other 50% distributed as *a cy pres* donation to Nevada Legal Services.

Other courts have found similar considerations supported approval of settlements containing reversion provisions, at least at the preliminary stage. *See e.g. Dixon v. Cushman &*

*Wakefield W., Inc*., No. 18-cv-05813-JSC, 2021 U.S. Dist. LEXIS 164001, at *36 (N.D. Cal. Aug. 30, 2021) (finding estimated potential reversion of $940,677.24 "small compared to the size of the settlement," which was for $4.9 million, and thus concluding "at least for purposes of preliminary approval—that a claims-made distribution with only those who opt-in releasing any claims and the funds for those who do not opt-in to reverting to Defendants is fair and reasonable under the circumstances here."); *Foster v. Advantage Sales & Mktg., LLC*., No. 18-CV-07205-LB, 2019 U.S. Dist. LEXIS 213734, 2019 WL 6699793, at *3 (N.D. Cal. Dec. 9, 2019) (preliminarily approving settlement where if non-California members of the FLSA collective did not cash their settlement checks, they would not be deemed to have opted in and the funds would revert to the defendant); *Trout v. Meggitt-USA Servs*., No. 2:16-cv-07520-ODW(AJW), 2018 U.S. Dist. LEXIS 64672, at *17 (C.D. Cal. Apr. 17, 2018) (preliminarily approving FLSA collective action settlement and finding reversion of unclaimed fund reasonable in part because the defendant "would remain liable to all employees that did not opt-in to the settlement, as they will not waive any FLSA-related claims and would remain free to individually pursue those claims."); *Minor v FedEx Office & Print Servs. Inc*., No. C09-1375 TEH, 2013 U.S. Dist. LEXIS 18224, 2013 WL 503268, at *4 (N.D. Cal. Feb. 8, 2013) (finding reversion clause not "inherently inadequate" for purposes of preliminary approval where there was a minimum distribution floor of 45%, a contention that reversion was essential for defendant to agree to settlement, and parties anticipated a relatively high claim rate); *see also Nur v. Tatitlek Support Servs*., No. 15-CV-00094 SVW (JPRx), 2016 U.S. Dist. LEXIS 74296, at *8 (C.D. Cal. Apr. 25, 2016) (noting that "claims-made settlements, with a reversion of unclaimed funds to the employer are routinely approved by the Ninth Circuit and Courts in California" and collecting cases).

The Parties are hopeful that the results of the notice process will be sufficiently positive to ameliorate any remaining concerns at the final approval stage. *See, e.g., In re Volkswagen*, 895 F.3d at 612 ("The incentives for class members to participate in the settlement, the complementary inducement for Volkswagen to encourage them to participate, the value of the claims, and the actual trend in class member participation all indicate that the reversion clause did not, in design or in effect, allow VW to recoup a large fraction of the funding pool."); *Martinez v. Knight Transp.,*

*Inc.*, No. 1:16-cv-01730-SKO, 2023 U.S. Dist. LEXIS 160285, at *30 (E.D. Cal. Sep. 8, 2023) ("[T]he Court is satisfied that, with the 50 percent minimum distribution of the NSA, the notice process described above, and the lack of objections, the reversionary nature of the claims-made settlement militates against a finding of collusion."). Indeed, the Claims Administrator estimates that 111,074.40 out of 125,888.68 qualifying workweeks will have been claimed by FLSA Collective Subclass members, Burton Decl. ¶¶ 4, 11, in which event Defendant would pay $600,457.58 of the $680,542.16 FLSA Settlement Fund, and would only keep $40,042.29, with the remaining portion distributed *cy pres*.

**Fairness of proposed attorneys' fees.**  The allocation of total settlement funds between Class Members and the attorneys is also fair, in that the Settlement Agreement provides for Plaintiff's counsel to seek no more than approximately one-third (1/3) of the Total Settlement Amount in attorneys' fees.  The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis.  Further, the requests are less than other attorneys' fees awards for wage and hour class actions, particularly where a significant portion of the Class Members will be receiving substantial claim payment amounts of several thousand dollars.

Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in a class action is to award a percentage of the "common fund" created as a result of the settlement. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records.  Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?"  Under a cost-benefit analysis, the answer would be a resounding, "No!"  Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis

of the attorneys' fees petition.  Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund.  Most important, however, is the effect the process has on the litigation and the timing of settlement.  Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

The percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources.  *See In re Activision Securities Litigation*, 723 F. Supp. at 1378-79.  Courts now routinely use the percentage of the common fund approach to determine the award of attorneys' fees.  (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

Plaintiff's Counsels' application for approximately one-third (1/3) of the Total Settlement Amount for attorneys' fees is within the range of reasonableness.  Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case.  *See Newberg on Class Actions* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).  According to *Newberg*:  "No general rule can be articulated on what is a reasonable percentage of a common fund.  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented."  *See Newberg*, § 14:6.[4]  Further, although Defendant denies any liability (considering the benefit to the class moving forward of the Defendant clarifying the application of its wage and hour laws and ensuring compliance), the relief to the prospective class may be much greater than the remedial economic relief achieved.  If the prospective relief were quantified, the percentage of the fee in contrast to the benefit to the class would be much less than the proposed fee award.

---

[4]  *See also, In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *In re Public Ser. Co. of New Mexico*, 1992 WL 278452, at *1, *12 (S.D.Cal. July 28, 1992) (awarding one-third); *Antonopulos v. North American Thoroughbreds, Inc.*, 1991 WL 427893, at *1, *4 (S.D. Cal. May 6, 1991) (awarding one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *1, *10 (S.D. Cal. Aug.30, 1990) (awarding 30% attorneys' fee plus expenses).

In addition to attorneys' fees, Plaintiffs' counsel also requests reimbursement of actual litigation costs, primarily the mediator's fee and for travel associated with the mediation and final approval hearing).

Accordingly, the attorneys' fees and costs sought in this case should be preliminarily judged as fair and reasonable.  Plaintiff will seek approval of the proposed attorneys' fees and costs in connection with her motion for final approval of the Settlement.

**Proposed Enhancement Award and Individual Claims Award are Fair**.  The principle of fairness is also well served by the $10,000.00 enhancement payment proposed for the named Plaintiff.  Plaintiff has provided invaluable assistance to Plaintiff's counsel in explaining Defendant's alleged compensation policies and procedures and in providing information to assist in the settlement negotiations. *See* Conlon Decl. ¶ 24. Further, Plaintiff incurred significant personal risk in bringing this lawsuit on behalf of the other persons in the class. *Id*.; *see, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where defendant prevailed at trial, named plaintiffs were held liable, jointly and severally, for defendant's attorneys' fees).  She could have been held liable for Defendant's costs if they were ultimately unsuccessful in resolving the case and their potential employment opportunities could (and can still be) impacted because of their public participation in this lawsuit.  Such service payments are recognized as serving an important function in promoting class action settlements.  In *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit.  *Id.* at 1024.  Further, the proposed $15,000.00 Individual Claims Award to the named Plaintiff is fair consideration for the dismissal of her individual claims and her general release of claims.  *See Selk v. Pioneers Mem'l Healthcare Dist*., 159 F. Supp. 3d 1164, 1179 (S.D. Cal. 2016) (approving FLSA collective settlement in which named plaintiff agreed to general release in exchange for separate payment).  Accordingly, the Enhancement Award and Individual Claims Award should be preliminary adjudged as fair and should be approved at the final fairness hearing.

### 4. The Notice Plan Should Be Approved

The Notices (**Exhibit A** to the Settlement) clearly explain the process; how to participate in, request to be excluded from or object to the Settlement; and the consequences of the action the Class Member takes (opting in, doing nothing, opting out, or objecting), in terms of both financial benefit and release of claims. The Notices advise Class Members about the final approval hearing, their rights with respect to that hearing, and how to get more information. Likewise, the Claim Form and Opt Out Form are simple and straightforward. The 60-day time frame for submitting either form is reasonable, allowing Class Members to digest the information in the Notices and obtain answers to questions before deciding on the action they want to take. Accordingly, in addition to approving the Settlement Agreement as a whole, Plaintiff respectfully asks that the Court approve the Notices, and other ancillary forms, in substantially the format presented with the Settlement.

### 5. Class Counsel Should Be Appointed

Plaintiff respectfully submits that Zijian Guan and Nicholas R. Conlon of Brown, LLC in Jersey City, New Jersey and Don Springmeyer of Kemp Jones, LLP should be appointed as Class Counsel.

In determining whether to appoint class counsel under Fed. R. Civ. P. 23(g), the Court must consider the following factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.

As indicated in the firm resume included as Exhibit A to the Declaration of Nicholas Conlon, Brown, LLC is led by Jason T. Brown, who previously worked as a Legal Advisor and Special Agent for the FBI and who has been practicing law for over twenty-five (25) years. The firm has an extensive track record of serving as collective in class counsel in wage-and-hour settlements like the present one, including several other call-center cases that have been approved in this district. *See Clark, et al. v. Bank of America Corporation*, No. 2:16-cv-02228-GMN-VCF and *Howard v. Southwest Gas Corporation*, No.: 2:18-cv-01035-JAD-VCF.

Class Counsel's efforts in this action have included investigating the claims of Plaintiff and dozens of putative collective and class members by interviewing them regarding their employment and potential wage-and-hour claims and reviewing their documents, investigating the Defendant, drafting and filing the Complaint, exchanging documents and information with Defendant, reviewing pay and timekeeping data received from Defendant and using same to create a global damages model, participating in mediation, negotiating the settlement term sheet, participating in the drafting of the Settlement Agreement, exhibits, and approval motion. *See* Conlon Decl. ¶ 20. To date, Plaintiff's counsel has spent over 500 hours on this case and expects to spend significantly more time attending the preliminary approval hearing (if any), working with the Claims Administrator to ensure the notice is provided in a timely manner, handling inquiries from putative collective and Class Members during the notice period, preparing the motion for final approval of the Settlement and the attorneys' fees, costs, Enhancement Award, and the Individual Claims Award, attending the final approval hearing, and working with the Claims Administrator to ensure that collective and Class Members receive their Settlement checks. *Id.* ¶¶ 21-22. The work that Brown, LLC and Kemp Jones, LLP have performed thus far in litigating and settling this case demonstrates their commitment to the class.

**B. Approval of the Settlement Under the FLSA**

"Before approving the settlement of an FLSA collective action, the court must undertake an inquiry similar to that required for Rule 23 class action settlements." *Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367, 379 (D. Nev. 2018). "The requirements for approval of a FLSA collection action settlement are less stringent, however, because persons who do not opt-in as parties to the FLSA collective action are not bound by the settlement." *Id.* (citing *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015)). Most district courts in the Ninth Circuit evaluate a proposed FLSA settlement under the standard established in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires that the settlement constitute a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* (citing *Gonzalez-Rodriguez v. Mariana's Enters.*, 2016 U.S. Dist. LEXIS 92198, 2016 WL 3869870, at *3 n. 1 (D.Nev. July 14, 2016)). "Some courts adopt the factors for approving a Rule

23 class action settlement even though some factors will not apply due to differences between FLSA actions and Rule 23 class actions." *Id.* (citing *Priyanka Khanna v. Intercon Sec. Sys*., 2014 U.S. Dist. LEXIS 48647, 2014 WL 1379861, at *6 (E.D.Cal. April 8, 2014)).

"With regard to approval of a FLSA collective action settlement, the court must [] determine whether a collective action is warranted and whether the ultimate settlement is fair." *Acuna*, 324 F.R.D. at 382-83 (quoting *Priyanka Khanna*, 2014 U.S. Dist. LEXIS 48647, 2014 WL 1379861, at *6)). In *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), the Ninth Circuit specified a two-step approach to determine whether an FLSA collective action should be certified. The first step requires the Court to "make an initial 'notice-stage' determination of whether potential opt-in plaintiffs are 'similarly situated' to the represented plaintiffs." *Id*. at 1110. According to the Ninth Circuit, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material  to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117.

Here, approval of the Settlement under the FLSA is supported by the same facts and arguments set forth above in support of approval under Rule 23(e). The monetary relief available to the Class Members under the Settlement reflects a fair and reasonable rate of recovery on their potential claims, based on Class Counsel's evaluation and analysis of the ample volume of relevant information including the Class Members' payroll data and thorough interviews with over a dozen Class Members, and their consideration Defendant's defenses, which included failing to establish that Defendant knew of or permitted any off the clock work, failing to overcome Defendant's showing that its written timekeeping policies mandated reporting of all time worked, failing to show that Defendant willfully violated the FLSA (thus limiting the recovery to a 2-year period); Defendant establishing that the pre-shift work allegedly performed off the clock is *de minimis* and thus not-compensable; and Defendant establishing that its action were taken in good faith (thus limiting the recovery to actual wage damages), as well as Defendant successfully opposing conditional certification and/or moving for decertification.

Further, conditional certification is appropriate because Plaintiff and the FLSA Collective Subclass Members are similarly situated in that they worked as call center agents, were responsible

for handling inbound telephone calls from Defendant's clients and customers, were subject to the same formal policies regarding timekeeping and payment and wages, and allegedly suffered from the Log-in Claim and Overtime Rate Claim. The Parties agree that, for purposes of settlement only, the criteria for certifying the FLSA Collective Subclass under 29 U.S.C. § 216(b) are satisfied in this case and the proposed Collective should be certified for purposes of the Settlement.

## V.    **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court: (1) preliminarily approve the Settlement as fair, reasonable, and adequate; (2) conditionally certify the FLSA Collective Subclass and Rule 23 Settlement Subclass for settlement purposes only; (3) approve their proposed Notices to be disseminated to collective and Class Members pursuant to the Settlement Agreement; (4) appoint Brown, LLC and Kemp Jones, LLP as Class Counsel; (5) appoint Simpluris, Inc. as the Claims Administrator; and (6) schedule a fairness hearing to consider final approval of the proposed Settlement, and approval of requested attorneys' fees, costs, and the Enhancement Award and Individual Claims Award to Plaintiff.

DATED this 24th day of October, 2023.

KEMP JONES, LLP


*/s/ Don Springmeyer*
Don Springmeyer, Esq. Nevada Bar No. 1021
3800 Howard Hughes Pkwy, 17th Floor
Las Vegas, Nevada 89169

*Attorneys for Plaintiff*


BROWN, LLC

*/s/ Nicholas R. Conlon*
Nicholas R. Conlon (*admitted pro hac vice*)
Zijian Guan (*admitted pro hac vice*)
Jason T. Brown (*admitted pro hac vice*)
111 Town Square Place, Suite 400
Jersey City, NJ 07310

DATED this 24th day of October, 2023.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


*/s/ Anthony L. Martin*
Anthony L. Martin, Esq. Nevada Bar No. 8177
Dana B. Salmonson, Esq. Nevada Bar No. 11180
10801 W. Charleston Blvd., Suite 500
Las Vegas, Nevada 89135

*Attorneys for Defendant*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this <u>24th</u> day of October, 2023, a true and correct copy of **RENEWED JOINT MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS AND COLLECTIVE ACTION SETTLEMENT** was served via the United States District Court CM/ECF system on all parties or persons on the service list.

*/s/ Pamela McAfee*
An employee of Kemp Jones, LLP
