Don Springmeyer, Esq.
Nevada Bar No. 1021
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

*Attorneys for Plaintiff Brielle Meagher*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BRIELLE MEAGHER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TELUS INTERNATIONAL (U.S.) CORP.,<br><br>Defendant. | Case No.:   2:20-cv-02074-RFB-DJA<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF REVISED CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>**Hearing Date/Time: 8:30 a.m. on 5/9/2024** |

*KEMP JONES, LLP*
*3800 Howard Hughes Parkway*
*Seventeenth Floor*
*Las Vegas, Nevada 89169*
*(702) 385-6000 • Fax (702) 385-6001*
*kjc@kempjones.com*

Plaintiff Brielle Meagher, by and through her attorneys of record, pursuant to her and Defendant's (collectively the 'Parties') Revised Joint Stipulation of Settlement and Release ("Settlement") (ECF No. 55), and the Court's November 14, 2023 Order preliminarily approving the Settlement (EFC No. 57 ("Preliminary Approval Order"), and in anticipation of the final hearing scheduled for May 9, 2024, hereby informs the Court that the Parties have effectuated the notice pursuant to the Settlement and Preliminary Approval Order, and for the reasons set forth herein, Plaintiff requests that the Court (1) grant final approval to this Settlement and find that the Settlement is fair, reasonable, and adequate in all respects; (2) confirm the appointment of Brielle Meagher as Class Representative and approve the proposed Enhancement Award and Individual Claims Award; (3) confirm the appointment of Nicholas R. Conlon and Zijian Guan of Brown, LLC and Don Springmeyer of Kemp Jones, LLP as class counsel for the settlement class and approve their requests for attorneys' fees and litigation costs; (4) approve the proposed payment to Simpluris for administrative fees; (5) grant final class and collective certification for settlement purposes only; and (6) dismiss the lawsuit with prejudice pursuant to the Settlement.

1    This Motion is based on the following Memorandum of Points and Authorities, all

2    exhibits attached hereto, and any oral argument this Court may order.

3    DATED this 2nd day of May, 2024.        DATED this 2nd day of May, 2024.

4    KEMP JONES, LLP                          OGLETREE, DEAKINS, NASH, SMOAK &
                                              STEWART, P.C.
5

6    /s/ Don Springmeyer                     /s/ Anthony L. Martin
     Don Springmeyer, Esq.                   Anthony L. Martin, Esq.
7    (Nevada Bar No. 1021)                   (Nevada Bar No. 8177)
     3800 Howard Hughes Parkway, 17th Floor  10801 W. Charleston Blvd., Suite 500
8    Las Vegas, Nevada 89169                 Las Vegas, Nevada 89135

9    Nicholas R. Conlon (*admitted pro hac vice*)    *Attorneys for Defendant*
     Zijian Guan (*admitted pro hac vice*)
10   Jason T. Brown (*admitted pro hac vice*)
     BROWN, LLC
11   111 Town Square Place, Suite 400
     Jersey City, New Jersey 07310
12

13   *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

## I.  __INTRODUCTION__

In accordance with the Court's Preliminary Approval Order, Simpluris has sent the Court-approved Notice to the Class Members and the April 5, 2024 response deadline has passed. No Class Members have objected. A total of 595 FLSA Collective Subclass Members have elected to participate in the Settlement and will be paid a total of $339,333.34 from the FLSA Settlement Fund, which equates to wages for 4.23 minutes per week (or 21.17 minutes per week), calculated at a time-and-a-half (1.5) overtime rate of pay. Of the 1,939 Class Members who fall within the definition of the Rule 23 Class, only 5 opted out of the class (0.26%). The remaining 1,934 Class Members will be paid a total of $169,666.67 from the Nevada State Law Settlement Fund in addition to their shares of the FLSA Settlement Fund if opted into the FLSA Collective, with the combined payment equating to wages for 5.79 minutes per day, or 28.93 minutes per week. This is an excellent recovery that strongly favors approval.

Accordingly, Plaintiff requests that the Court (1) grant final approval to this Settlement and find that the Settlement is fair, reasonable, and adequate in all respects; (2) confirm the appointment of Brielle Meagher as Class Representative and approve the proposed Enhancement Award and Individual Claims Award; (3) confirm the appointment of Nicholas R. Conlon and Zijian Guan of Brown, LLC and Don Springmeyer of Kemp Jones, LLP as class counsel for the settlement class and approve their requests for attorneys' fees and litigation costs; (4) approve the proposed payment to Simpluris for administrative fees; (5) grant final class and collective certification for settlement purposes only; and (6) dismiss the lawsuit with prejudice pursuant to the Settlement.

## II.  __FACTUAL BACKGROUND AND PROCEDURAL HISTORY__

Plaintiff filed a Complaint against Defendant in the United States District Court, District of Nevada on or about November 12, 2020. ECF No. 1.  The Complaint is brought on behalf of a putative nationwide FLSA collective and Nevada Rule 23 class of hourly-paid call center agents who were allegedly not paid for time spent starting up and logging to various computer systems and applications before their shifts and/or upon returning from their meal breaks ("Log-in Claim"), and/or received a rate of pay for overtime hours that did not incorporate call center

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

agents' non-base compensation, such as "Employee Appreciation" bonuses and shift differentials ("Overtime Rate Claims"), in violation of the FLSA and of NRS § 608.016, § 608.018 and NRS § 608.260. ECF No. 4 at ¶¶ 7-8.  Defendant disputes and denies Plaintiff's claims, asserting that it properly paid Plaintiff and class members' overtime under the FLSA and Nevada law.  Defendant also disputes that it did not properly calculate its employees' regular rates of pay.

In addition, Plaintiff asserted individual claims for (a) hostile work environment/sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, (b) gender discrimination in violation of Title VII, (c) retaliation in violation of Title VII, (d) hostile work environment/sexual harassment in violation of NRS § 613.330, (e) gender discrimination in violation of NRS § 613.330, (f) retaliation in violation of NRS § 613.340, (g) constructive discharge, (h) intentional infliction of emotional distress, and (i) negligent retention, supervision and training of supervisors and managers. Defendant disputes the allegations contained in the Complaint in their entirety. ECF No. 4, pgs. 12 – 20.

Following the filing of this Action, the Parties engaged in extensive discussions and informal discovery regarding their respective positions and the information and data needed to properly evaluate the merits of the Log-in Claim and Overtime Rate Claim. *See* Declaration of Nicholas Conlon in Support of Renewed Motion Joint Motion for Preliminary Approval (ECF No. 56-2), ¶ 3. Defendant's counsel provided Class Counsel with copies of its pay and timekeeping policies and de-identified time and payroll data for the putative collective and class members who were hired before January 1, 2020, with subsequently hired employees excluded on the basis of having signed arbitration agreements. *Id*. ¶ 4. Further, Defendant's counsel represented, and its records substantiated, that excluding employee hires on or after January 1, 2020 the putative nationwide collective covered 3,154 call center agents who worked in Nevada or Texas, with 1,964 of those persons falling within the putative Nevada class. *Id*. Class Counsel also conducted detailed interviews with Plaintiff and over a dozen opt-in plaintiffs regarding their potential claims under the FLSA and Nevada Revised Statutes. *Id*.

4

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

Based on this information, Class Counsel estimated that call center agents' base hourly rates were, on average, $15.51 per hour, they typically worked five (5) shifts per week, and they spent an average of 5.6 unpaid minutes per shifts starting up and logging to various computer systems and applications before their shifts and/or upon returning from their meal breaks. *Id*. ¶ 5. Using the payroll data provided from Defendant, Class Counsel calculated that a 5.6 unpaid minutes per day would equate to roughly $832,823.00 in overtime wages potentially recoverable under the FLSA's maximum three-year recovery period, with the potential for an equal amount in liquidated damages in the event of Defendant's inability to establish a good faith defense, plus an additional $147,187.00 in non-overtime wages potentially owed to Nevada Class Members under Nevada law for hours worked up to forty (40) in a workweek that were allegedly not paid according to the Log-in Claim. *Id*. Further, Class Counsel estimated that Defendant had approximately $56,000 in total exposure to the putative collective for the Overtime Rate Claim, bringing its total exposure on the Log-in Claim and Overtime Rate Claim to $1,868,833. *Id*.

Class Counsel also investigated and accounted for Defendant's defenses, which included that Plaintiffs allegedly would fail to establish that Defendant knew of or permitted any off the clock work, fail to overcome Defendant's showing that its written timekeeping policies mandated reporting of all time worked, fail to show that Defendant willfully violated the FLSA (thus limiting the recovery to a 2-year period), and that Defendant would establish that the pre-shift work allegedly performed off the clock is *de minimis* and thus not-compensable; and that its action were taken in good faith (thus limiting the recovery to actual wage damages), as well as the possibility of Defendant successfully opposing conditional certification and/or moving for decertification. *Id*. ¶ 6.

Following extensive discussions regarding the strengths of their respective positions, the Parties reached a proposed class action settlement through arms-length negotiations with the assistance of retired federal Judge Philip Pro at a mediation held on July 1, 2021. *Id*. ¶ 9. The parties initially moved for preliminary approval of their settlement on February 11, 2022. ECF No. 32. On September 28, 2022, the Court held a hearing and denied the motion for preliminary

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1    approval without prejudice. ECF No. 45.  The Court found the proposed thirty-day claim period

2    to be insufficient to notify class members, disapproved of any unclaimed funds reverting back to

3    Defendant, and directed the Parties to "provide a new proposal for the disbursement of any

4    unclaimed funds." *Id.* The Court also instructed the Parties to provide more information on the

5    proposed claim/disbursement process, including how the claims administrator will contact class

6    members about the claims process and how much a class member will be compensated in

7    relation to any alleged damages or lost wages. *Id.*

8         The Parties then proceeded to negotiate in hopes of agreeing on a set of modifications to

9    the settlement that would best satisfy the Court's concerns and worked with the Administrator

10   to compile the information requested by the Court. These efforts resulted in the proposed

11   Settlement now before the Court which was preliminarily approved on or about November 14,

12   2023. ECF No. 57.

13   **III.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS**

14        The Parties' Settlement provides for significant monetary recovery on behalf of the

15   Class and, with the exception of the named Plaintiff's release, releases only those wage claims

16   alleged or related to the Complaint, as well as sets forth the legally appropriate mechanism for

17   providing notice to the Class of the terms and conditions of the Settlement.

18        **A. The Recovery**

19        The Settlement provides for a Maximum Settlement Amount of One Million Four

20   Hundred Thousand and Zero Cents ($1,400,000.00).  *See* Settlement, ¶ 9. Out of that amount,

21   the following approximate breakdown applies:

22        • Approximately $850,677.70[1] in estimated settlement funds to the Class broken

23            down as follows:

24            ▪ Eighty percent (80%) of the estimated settlement funds shall be

25                apportioned amongst the members of the FLSA Collective Subclass

26

27   _____

28   [1] The net settlement amount (defined herein) is subject to depending on the amounts ultimately
     sought and awarded for attorney's fees, litigation costs, administration costs, the Enhancement
     Award, and the Individual Claims Award.

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

("FLSA Settlement Fund") and individual shares thereof shall be distributed to members of the FLSA Collective Subclass who submit timely, valid Claim Forms.

- Twenty percent (20%) of the Net Settlement Fund shall be apportioned to the Nevada State Law Settlement Fund and individual shares thereof shall be distributed to all Rule 23 Class Members who do not opt out of the Class, with no portion thereof reverting to or remaining with Defendant;

- An estimated $37,655.63 in settlement administration costs;
- $10,000.00 Enhancement Award to named Plaintiff Brielle Meagher for her participation in the lawsuit;
- $15,000.00 in Individual Claims Award to the named Plaintiff Brielle Meagher in exchange for the dismissal of her individual claims pled in the Complaint and her general release of claims;
- $466,666.67 in attorney's fees (1/3 of the Maximum Settlement Amount); and
- Up to $20,000.00 in actual costs.

Settlement at ¶¶1(l), 1(o), 10(d), 11, 12; Ex. 2 at ¶10. Settlement Awards for each FLSA Collective Subclass member and Rule 23 Settlement Subclass member will be allocated from the Net Settlement Amount and paid as follows: one-half (1/2) will be allocated to alleged unpaid wages for which IRS Forms W-2 will issue and one-half (1/2) will be allocated to alleged unpaid penalties and interest for which IRS Forms 1099-MISC will issue. Settlement at ¶ 10(f). Each Class Member who receives a Settlement Award shall pay his/her share of payroll taxes from the one-half (1/2) of the Settlement Award allocated to alleged unpaid wages. *Id.* Accordingly, each Settlement Award will be reduced by applicable payroll tax withholdings and deductions. *Id.* Defendant shall pay the normal employer's portion of payroll taxes separately in addition to the Settlement funds, as calculated by the Claims Administrator. *Id.*

Settlement Awards to the FLSA Collective Subclass will be determined by the Claims Administrator according to their Qualifying Workweeks within the time period covered by the FLSA Collective Subclass. *Id.* at ¶ 10(e)(i). Defendant will provide the Claims Administrator

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1  with the excel spreadsheet setting out the total number of Qualifying Workweeks for each

2  FLSA Collective Subclass member during the FLSA Collective Subclass Period. *Id.*   The

3  Claims Administrator shall assign to each FLSA Collective Subclass member a "Settlement

4  Ratio" which shall be a percentage of the total Qualifying Workweeks worked by all FLSA

5  Collective Subclass members in the FLSA Collective Subclass Period and the total Qualifying

6  Workweeks in the FLSA Collective Subclass Period for each individual FLSA Collective

7  Subclass member.  *Id.* The Claims Administrator shall then assign to each FLSA Collective

8  Subclass member a "Settlement Award" which shall be calculated by multiplying that Subclass

9  Member's Settlement Ratio by the FLSA Settlement Amount. *Id.* If the Court finally approves

10 the Settlement, the Claims Administrator would distribute a Settlement Award to each person

11 who falls within the FLSA Collective Subclass who submits a timely, valid Claim Form within

12 60 days after the Court-approved notice proposed herein, and/or who previously filed consent

13 forms in the Action that were not withdrawn.[2]  *Id.*

14        Similar to the Settlement Awards to the FLSA Collective Subclass, Settlement Awards

15 to the Rule 23 Settlement Subclass will be determined by the Claims Administrator according to

16 their Qualifying Workweeks within Rule 23 Settlement Subclass Period. *Id.* at ¶ 10(e)(ii).

17 Defendant will provide the Claims Administrator with the excel spreadsheet setting out the total

18 number of Qualifying Workweeks for each Rule 23 Settlement Subclass member during the

19 Rule 23 Settlement Subclass Period. *Id.*  The Claims Administrator shall assign to each Rule 23

20 Settlement Subclass member a "Settlement Ratio" which shall be a percentage of the total

21 Qualifying Workweeks all Rule 23 Settlement Subclass members in the Rule 23 Settlement

22 Subclass Period and the total Qualifying Workweeks in the Rule 23 Settlement Subclass Period

23 for each individual Rule 23 Settlement Subclass member. *Id.*  The Claims Administrator shall

24 then assign to each Rule 23 Settlement Subclass a "Settlement Award" which shall be

25

---

26 [2] The Settlement provides that "[i]f the total value of the Settlement Awards attributable to the
   Participating FLSA Collective Subclass Members is less than fifty percent (50%) of the amount
27 of the FLSA Settlement Fund, the difference shall be added to the Settlement Awards of all
   Participating FLSA Collective Subclass Members on a pro rata basis according to their
28 Settlement Ratios." Settlement, at ¶ 10(e)(i). Thus, the Participating FLSA Collective Subclass
   Members will receive at least half of the FLSA Settlement Fund, with 50% of any unreceived
   portion being distributed *cy pres* to Nevada Legal Services.

1   calculated by multiplying that Class Member's Settlement Ratio by the Nevada State Law

2   Settlement Fund. *Id.* The Claims Administrator will distribute a payment of a Settlement

3   Award to each Rule 23 Settlement Subclass member who does not opt-out of the Rule 23 Class.

4   *Id.*

5        Defendant will only keep 50% of any funds apportioned to FLSA Collective Subclass

6   members who do not submit timely, valid Claim Forms and/or to Class Members who opt out of

7   the Class, with the other 50% distributed as a *cy pres* donation to Nevada Legal Services.

8   Settlement, at ¶ 10(d).

9   **B. The Release**

10       The Settlement provides that, upon final approval by the Court, Plaintiff and the Class

11  Members will release claims as follows:

12       1.   <u>FLSA Collective Subclass Members</u>: Class Representative and each

13  FLSA Collective Subclass member who submits a timely and valid Claim Form in exchange for

14  the consideration recited in this Agreement shall fully and finally release and discharge

15  Defendant and the Released Parties from any and all wage and hour claims arising under the

16  FLSA, whether known or unknown, arising during the FLSA Collective Subclass Period, and

17  which arose out of or could have arisen out of the facts alleged in this lawsuit.

18       2.   <u>Rule 23 Settlement Subclass Members</u>: Class Representative and each

19  Rule 23 Settlement Subclass Member who do not submit a timely and valid Request for

20  Exclusion/Opt-Out Form shall fully and finally release and discharge Defendant and the

21  Released Parties from any and all applicable local and state law wage-and-hour claims

22  (including, but not necessarily limited to, contractual or common law claims, waiting time

23  penalty claims, claims arising under the Nevada Revised Statutes or Administrative Code

24  Chapter 608 and the Nevada Constitution asserted in or that could have been asserted in this

25  dispute and rights, demands, liabilities and causes of action of every nature and description,

26  whether known or unknown, arising during the Rule 23 Settlement Subclass Period, and which

27  arose out of or could have arisen out of the facts alleged in this lawsuit.

28

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

3.      <u>Class Representative</u>: Subject to Court approval, in exchange for her Individual Claims Award, the Class Representative shall knowingly and voluntarily release and forever discharge Defendant and the Released Parties of and from any and all claims, known and unknown, asserted or unasserted, which the Class Representative has or may have against Defendant and the Released Parties as of the date of execution of this Agreement including, but not limited to, all of her individual claims asserted in this Action for (a) hostile work environment/sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, (b) gender discrimination in violation of Title VII, (c) retaliation in violation of Title VII, (d) hostile work environment/sexual harassment in violation of NRS § 613.330, (e) gender discrimination in violation of NRS § 613.330, (f) retaliation in violation of NRS § 613.340, (g) constructive discharge, (h) intentional infliction of emotional distress, and (i) negligent retention, supervision and training of supervisors and managers, as well as other potential claims referenced in the Settlement.

**C. The Settlement Notice Process**

On February 5, 2024, pursuant to the Preliminary Approval Order, the settlement administrator Simpluris mailed the Notice Packets via First Class Mail to 3,118 FLSA Collective Subclass Members, 1,949 of whom are also Rule 23 Class Members. *See* Ex. 1, Declaration of Mary Butler ("Butler Decl."), ¶ 7.  Of the 3,118 Notice Packets mailed, 846 were returned as undeliverable. *Id*. at ¶ 10. Simpluris was able to re-mail the Notice Packets to 750 of these Class Members to new addresses that were found by Simpluris through various methods and only 96 Notice Packets were undeliverable. *Id*. Hence, the successful mailing rate of the Notice Packets is approximately 96.92%.  The Notice Packets included a link to a settlement website established and maintained by Simpluris (www.teluswagesettlement.com) for the purpose of viewing the Notice and submitting Claim Forms and Request for Exclusion/Opt-Out Forms. *Id.* at ¶ 5. Further, on March 6, 2024, Simpluris mailed a Reminder Notice by first class mail to the 2,844 Class Members who had not yet submitted Claim Forms or Request for Exclusion/Opt-Out Forms. *Id.* at ¶ 11.

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

The deadline for each Class Member to submit a Claim Form, Request for Exclusion, or objection(s) was April 5, 2024. *Id.* at ¶ 15. Simpluris received 580 Claim Forms and 5 Requests for Exclusion (all of which were timely submitted), and no objections. *Id.* at ¶¶ 12, 15. In addition to the 580 FLSA Collective Subclass Members who submitted Claim Forms, there are 15 additional persons who qualify as Participating FLSA Collective Subclass Members due to having previously filed consent forms in the Action, which equates to 595 Participating FLSA Collective Subclass Members in total, *id.* at ¶ 12, who represent approximately 19% of the 3,118 FLSA Collective Subclass Members, and whose Qualifying Workweeks collectively comprise approximately 33% of all FLSA Collective Subclass Members' Qualifying Workweeks. The 5 Requests for Exclusion represent just 0.26% of the 1,949 Rule 23 Class Members.

Subject to Court approval, Defendant will pay 50% of the FLSA Settlement Fund, which amounts to $339,333.33, to be allocated amongst the 595 Participating FLSA Collective Subclass Members based on their Qualifying Workweeks. *Id.* at ¶ 18. Of the remaining $339,333.34 of the FLSA Settlement Fund, fifty percent (50%) shall remain property of Defendant, and the remaining fifty percent (50%) shall be distributed as a cy *pres* donation to Nevada Legal Services. *Id.* The highest FLSA Collective Subclass Settlement Share to be paid is approximately $1,677.16 and the average FLSA Collective Subclass Settlement Share to be paid is approximately $572.23. *Id.* at ¶ 19.

In addition, at least $169,666.67 will be paid from the Nevada State Law Settlement Fund to the 1,934 Rule 23 Class Members (99.74% of the Rule 23 Class Members) who did not submit timely, valid Request for Exclusion/Opt-Out Forms, with the highest share being approximately $330.87 and the average share being approximately $87.73. *Id.* at ¶¶ 20-21.

## IV.    <u>THE COURT SHOULD GRANT THE PLAINTIFF'S REQUEST FOR FINAL APPROVAL OF THE SETTLEMENT</u>

Federal Rule of Civil Procedure 23 provides that "a class action shall not be dismissed or compromised without approval of the court." Fed. R. Civ. P. 23(e). Generally, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.*, 252

F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Courts act within their discretion in approving settlements that are fair, not collusive, and take into account "all normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 179 (5th Cir. 1979). The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004) (noting "strong judicial policy" favoring settlements reached through arms-length, non-collusive negotiations); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement); *Franklin v. Kaypro*, 884 F.2d 1222, 1227 (9th Cir. 1989) ("Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial . . . [t]he economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."); *see generally, Newberg On Class Actions* § 11.41 (4th ed. 2002) ("Newberg").

Such approval typically involves a two-step process: (1) preliminary approval of the class settlement and notice to all class members and (2) a final fairness hearing to determine whether the settlement is fair, reasonable, and adequate. *See e.g., Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565, at *5 (D. Nev. June 27, 2011); *Alberto*, 252 F.R.D. at 658. Stage two, the stage at issue here, is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Id*. at 659 (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.633 (2004) ("Manual for Complex Litigation") ("Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing.) A court should approve a class settlement under Rule 23(e) if it "is

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); accord *In re Mega Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See, e.g., Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003). Courts look to a variety of factors to determine whether a settlement is "fair, reasonable, and adequate," including (1) the amount offered in the settlement, (2) the reaction of the class to the proposed settlement, (3) the strength of the plaintiffs' case balanced against the "risk, expense, complexity, and likely duration of further litigation" and the "risk of maintaining class action status throughout the trial," (4) the "extent of discovery completed" and the "stage of the proceedings," and (5) the informed views of experienced counsel. *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton*, 327 at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).

In considering these factors, courts recognize a strong judicial policy favoring settlements, particularly in the context of complex class litigation. *See In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008). Courts are not required to assess whether the settlement is ideal or the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Hanlon*, 150 F.3d at 1027.

Indeed, where a settlement results from arm's-length negotiations after "relevant discovery" there is "a presumption that the agreement is fair." *Linney v. Cellular Ala. P'Ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997). So long as the discovery is sufficient to give the parties a clear view of the relative strengths and weaknesses of their respective cases, it need not

be exhaustive. *See In re Immune Response Secur. Liti*g., 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (approving settlement where informal discovery gave parties clear view of the strength and weaknesses of case). Notwithstanding any presumptions, the ultimate touchstone is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961. And, as the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. Accordingly, any review of Rule 23(e) of the Federal Rule of Civil Procedure "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Thus, a court's approval of a settlement will not be questioned "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest." *Staton*, 327 F.3d at 961.

### 1. The Settlement Provides Adequate, Fair, and Just Relief to the Class.

If the Settlement is approved, Defendant will pay at least $339,333.33 through the FLSA Settlement Fund, to be allocated amongst the 595 Participating FLSA Collective Subclass Members, which equates to wages for 4.23 minutes per week (or 21.17 minutes per week), calculated at a time-and-a-half (1.5) overtime rate of pay. In addition, Defendant will pay $169,666.67 through the Nevada State Law Settlement Fund to the 1,934 Rule 23 Class Members who did not submit timely, valid Request for Exclusion/Opt-Out Forms, which equates to wages for 1.55 minutes per day (or 7.77 minutes per week), calculated at a regular, non-overtime rate of pay. The 494 persons who qualify as both Participating FLSA Collective Subclass Members and Rule 23 Class Members will obtain a recovery roughly equivalent to wages for 5.79 minutes per day, or 28.93 minutes per week.

The proposed recovery is fair both in light of Class Counsel's prior determination that the opt-in plaintiff surveyed worked an average of 5.6 unpaid minutes per day (which equates to 28 minutes over the course of a 5-shift week), and when compared with settlements approved in other FLSA call center cases. *See Turner v. Concentrix Servs. US, Inc*., 2023 U.S. Dist. LEXIS 5117 (W.D. Ark. Jan. 11, 2023) (approving settlement that provided recovery of approximately 35 minutes of off-the-clock work performed per week using the average hourly base rate of pay

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

of all plaintiffs); *Howard v. Web.com Grp. Inc*., 2020 U.S. Dist. LEXIS 256933, at *15 (D. Ariz. Sep. 18, 2020) (approving settlement that provided recovery of approximately 15 to 20 minutes of unpaid start-up time for each week worked); *Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEXIS 124017, at *9 (D. Ariz. July 24, 2019) (approving settlement that provided recovery of about 5 minutes of unpaid work per day, or 25 minutes of unpaid time per week).

The monetary relief available to the Class Members under the Settlement reflects a fair and reasonable rate of recovery on their potential claims, based on Class Counsel's evaluation and analysis of the ample volume of relevant information including the Class Members' payroll data and thorough interviews with over a dozen Class Members, and their consideration of the Defendant's defenses, which included failing to establish that Defendant knew of or permitted any off the clock work, failing to overcome Defendant's showing that its written timekeeping policies mandated reporting of all time worked, failing to show that Defendant willfully violated the FLSA (thus limiting the recovery to a 2-year period); Defendant establishing that the pre-shift work allegedly performed off the clock is *de minimis* and thus not-compensable; and Defendant establishing that its action were taken in good faith (thus limiting the recovery to actual wage damages), as well as Defendant successfully opposing conditional certification and/or moving for decertification.

Given the significant legal uncertainty, and the real risk of receiving nothing at the end of the day, the Settlement represents a substantial recovery for the Class Members. Although a larger award was theoretically possible by litigating this case to the end of trial, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes" in exchange for certainty and resolution. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).[3]

---

[3] Despite the Parties significant efforts to ensure the Notice would be successfully delivered to, and easily understood by Class Members, only approximately 33% of the FLSA Settlement Fund is attributable to the Qualifying Workweeks of the Participating FLSA Collective Subclass Members, and as a result, $169,666.67 (12.12% of the Maximum Settlement Amount) will revert to Defendant. Settlements with similar reversions of funds have been approved where, as here, those funds relate to shares of putative collective members who did not opt it and will not release FLSA claims. *See Dixon v. Cushman & Wakefield W., Inc*., No. 18-cv-05813-JSC, 2022 U.S. Dist. LEXIS 73512, at *33 (N.D. Cal. Apr. 21, 2022) (granting final approval of wage-and-hour collective and class settlement, where defendants kept approximately $1.1 million of the

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

### 2. The Response from the Class Has Been Very Positive.

The response from the Class has been very positive. As of the date of Ms. Butler's declaration, Simpluris had received only 5 Requests for Exclusion out of the 1,939 Rule 23 Class Members, representing a 0.26% opt-out rate. *See* Butler Decl. ¶¶ 7, 15. Further, no objections to the Settlement have been received. *Id.* at ¶ 16. *See Nat'l Rural, 221 F.R.D. at 529* ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed settlement action are favorable to the class members.").

Similarly, the 595 Participating FLSA Collective Subclass Members represent about 19% of the 3,118 FLSA Collective Subclass Members, and their Qualifying Workweeks collectively comprise approximately 33% of all FLSA Collective Subclass Members' Qualifying Workweeks. *See Padron v. Golden State Phone & Wireless*, No. 16-cv-04076-BLF, 2018 U.S. Dist. LEXIS 83610, at *17 (N.D. Cal. May 16, 2018) (approving wage-and-hour collective and class settlement where 19.35% of the potential settlement collective members opted in and finding that this "participation rate exceeds other federally approved FLSA settlements.") (collecting cases).

### 3. The Settlement Is Presumed to be Fair.

Significantly, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." Newberg § 11.42 (4th ed. 2002). Such is the case here. Class Counsel engaged in extensive factual investigation (through informal discovery) and participated in direct settlement discussions, ultimately coming to a resolution through a mediation with retired federal Judge Philip Pro. The Parties engaged in serious discussions of the relative strengths and weaknesses of the claims, the costs of protracted litigation, and the total potential liability at issue in the case. The Parties (both represented by counsel who have litigated numerous wage and hour collective and class actions) agreed to settle Plaintiff's claims for a prompt and certain resolution that represents damages for

---

$4.9 million common fund (22.45%) representing shares of putative FLSA collective members who did not opt in).

1    each Class Member who is entitled to any alleged damages based on number of workweeks

2    worked. Finally, there are no objectors to the Settlement. *See* Butler Decl. at ¶ 16; see also,

3    *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992) (recognizing that fairness

4    of a class action settlement may be inferred if few class members object to it). Accordingly, the

5    Settlement should be presumed fair.

6         **4.   The Recommendation of Experienced Counsel Favors Approval of the**

7            **Settlement.**

8          The "recommendations of plaintiffs' counsel should be given a presumption of

9    reasonableness," particularly when counsel has significant experience litigation similar cases.

10   *Boyd v. Bechtel Corp.*, 485 Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*,

11   87 F.R.D. 15, 18 (N.D. Cal 1980) ("[T]he fact that experienced counsel involved in the case

12   approved the settlement after hard-fought negotiations is entitled to considerable weight.").

13   "[P]arties represented by competent counsel are better positioned than courts to produce a

14   settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific*

15   *Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). Indeed, when evaluating a

16   proposed settlement, a court, absent fraud collusion, or the like, should be hesitant to substitute

17   its own judgment for that of counsel. *See Flinn v. FMC Corp.*,528 F.2d 1169, 1173 (4th Cir.

18   1975); *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (finding that a presumption

19   of correctness applies to a class action settlement reached in arm's length negotiations between

20   experienced, capable counsel after meaningful discovery, citing the Manual for Complex

21   Litigation § 30.41 (2nd ed. 1985)).

22         Here, Class Counsel, who have extensive experience prosecuting and litigating

23   employment cases and complex class actions, and who conducted a legal and factual

24   investigation into the claims in this case, firmly believe that the proposed Settlement is fair,

25   reasonable, adequate and is in the best interest of all Class Members. *See* Ex. 2, Declaration of

26   Nicholas Conlon in Support of Plaintiff's Unopposed Motion for Final Approval, ("Conlon

27   Decl."), ¶ 2. Accordingly, this factor also weighs in favor of final approval.

28

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1    **V.    THE ENHANCEMENT AWARD AND INDIVIDUAL CLAIMS AWARD**

2    **SHOULD BE APPROVED**

3         The Named Plaintiff Ms. Meagher respectfully requests that the Court approve the two

4    payments allocated to her under the Settlement Agreement in addition to her shares of the FLSA

5    Settlement Fund and Nevada State Law Settlement Fund: an Enhancement Award of

6    $10,000.00 for her service as Class Representative, and an Individual Claims Award of

7    $15,000.00 as consideration for her general release of all claims as provided in Paragraph 18(c)

8    of the Settlement Agreement, including her claims pled in Counts III – X of the Complaint.

9         The purpose of a service award is to "compensate class representatives for work done on

10   behalf of the class, to make up for financial or reputational risk undertaking in bringing the

11   action, and, sometimes, to recognize their willingness to act as a private attorney general."

12   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). "To justify a service

13   award, a class representative must present 'evidence demonstrating the quality of plaintiff's

14   representative service,' such as 'substantial efforts taken as class representative to justify the

15   discrepancy between [his] award and those of the unnamed plaintiffs.'" *Daniels v. Aria Resort*

16   *& Casino, LLC*, No. 2:20-cv-00453-GMN-DJA, 2023 U.S. Dist. LEXIS 50271, at *15-16 (D.

17   Nev. Mar. 23, 2023) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008)).

18        As set forth in Ms. Meagher's declaration, she incurred risk in filing this lawsuit because

19   public records thereof are discoverable to anybody who searches on the internet for her and/or

20   her former employment with Telus, and due to the possibility of being held responsible for

21   Telus' costs if the lawsuit were unsuccessful. *See* Ex. 3, Meagher Decl. ¶¶ 8-9. Further, she has

22   devoted significant time and effort to the case by providing information and documents,

23   participating remotely in the mediation held on July 1, 2021, and regularly communicating and

24   maintaining in contact with Class Counsel. *Id.* at ¶¶ 8, 11, 14-16. Ms. Meagher has been

25   responsive, ready and willing at all times to assist, including traveling from her current home in

26   Georgia to Nevada to attend any depositions or other proceedings in this lawsuit. *Id.* ¶¶ 12-13.

27   Accordingly, the $10,000 Enhancement Award, which represents less than 1% of the Maximum

28   Settlement Amount, is reasonable in light of Ms. Meagher's service as Class Representative.

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1   *See May v. Wynn Las Vegas, LLC*, No. 2:15-cv-02142-RFB-DJA, 2021 U.S. Dist. LEXIS

2   15898, at \*10 (D. Nev. Jan. 25, 2021) (approving payment of $15,000 service awards to each of

3   the three class representatives as part of an $898,500.00 wage-and-hour settlement).

4   Further, the proposed $15,000.00 Individual Claims Award to the named Plaintiff is a

5   fair consideration for her dismissal and general release of all claims, including her claims based

6   on her alleged sexual harassment by her former supervisor and constructive termination, as set

7   forth in Counts III – X of the Complaint, including Paragraphs 82-85. *See Selk v. Pioneers*

8   *Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1179 (S.D. Cal. 2016) (approving $50,000

9   FLSA collective settlement from which named plaintiff received a $5,000 service payment and

10   an additional $5,500 payment in exchange for providing a general release).

## VI.   CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Class Counsel respectfully seeks approval of the attorneys' fees proposed in the

Settlement Agreement in the amount of $466,666.67, which is one third (1/3) of the $1.4 million

Maximum Settlement Amount.

### A. Class Counsel's Fee Award Is Properly Calculated as a Percentage of the Maximum Settlement Amount.

The Federal Rules of Civil Procedure expressly authorize an award of reasonable

attorneys' fees and costs in a certified class action pursuant to the parties' agreement or to the

extent otherwise authorized by law. Fed. R. Civ. P. 23(e). The FLSA also provides for attorneys'

fees. 29 U.S.C. § 216(b).

Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund

for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee

from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose

of the common fund approach is to "spread litigation costs proportionally among all the

beneficiaries so that the active beneficiary does not bear the entire burden alone." *Vincent v.*

*Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

19

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1    Historically district courts employ the common fund method in determining the

2    reasonableness of attorneys' fees in cases where - as here - the settlement produces a lump sum

3    for the benefit of the entire class. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19

4    F.3d 1291, 1306 (9th Cir. 1994) ("Under the percentage method, the court simply awards the

5    attorneys a percentage of the fund sufficient to provide plaintiffs' attorneys with a reasonable

6    fee." (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989);

7    *Staton*, 327 F.3d at 972 (awarding a percentage of the common fund is particularly appropriate

8    "'when each member of a certified class has an undisputed and mathematically ascertainable

9    claim to part of a lump-sum judgment recovered on his behalf.'") (quoting *Boeing Co. v. Van*

10   *Gemert*, 444 U.S. 472, 478-79 (1980)). In contrast, "[t]he 'lodestar method' is appropriate in

11   class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust,

12   copyright, and patent acts), where the relief sought-and obtained-is often primarily injunctive in

13   nature and thus not easily monetized, but where the legislature has authorized the award of fees

14   to ensure compensation for counsel undertaking socially beneficial litigation." *In re Bluetooth*

15   *Headset Prods. Liability. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). According to one empirical

16   study, almost 70% of district court judges employ the percentage-of-the-recovery method

17   without any kind of lodestar analysis. Brian T. Fitzpatrick, *An Empirical Study of Class Action*

18   *Settlements and Their Fee Awards*, 7 J. Empirical Legal Studies 4 (December 2010) *see*

19   *also* Shannon Green, "Wage and Hour Litigation is Big - and Getting Bigger," Law.com (March

20   19, 2012), *available at* https://www.law.com/almID/1202546026856/ (last accessed May 1,

21   2024).

22   In *Boeing*, the Supreme Court specifically addressed "whether a proportionate share of

23   the fees awarded to lawyers who represented the successful class may be assessed against the

24   unclaimed portion of the fund." 444 U.S. at 473. The Supreme Court found the total amount of

25   the fund the proper denominator, approving fees of approximately $2,000,000.00 on a

26   settlement valued at $7,000,000.00 where claims totaled $706,600 of $1,544,300 in unconverted

27   debentures at issue, or 47% of the total. The Court found that any latent reversionary right the

28   defendant possessed contingent on the failure of absentee class members to exercise their

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1    present rights of possession did not defeat each class member's equitable obligation to share the

2    expenses of the litigation. *Id*. at 481-82.

3    Moreover, in *Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026 (9th Cir.

4    1997), the gross settlement fund was valued at $4.5 million, the parties agreed to 33% of the

5    total value for attorneys' fees, and the amount of the claims totaled just $ 10,000. The district

6    court assessed the attorneys' fees as 33% of the $10,000 amount claimed. The Ninth Circuit

7    reversed, finding that the fee award should have been based on 33% as agreed by the parties

8    based on the total recovery value of $4.5 million: "[T]he court abused its discretion by basing

9    the fee on the class members' claims against the fund rather than on a percentage of the entire

10   fund . . . ." *Williams*, 129 F.3d at 1027.

11   Under these principles, a percentage of the common fund fee award is properly based on

12   the total settlement value of $1.4 million in this case. Class Counsel's request of $466,666.67,

13   one third of this amount, is fair compensation for undertaking complex, risky, expensive, time-

14   consuming, and prolonged litigation solely on a contingency basis. *See* Conlon Decl., ¶ 3. The

15   request is in line with attorneys' fees awards in other wage-and-hour class actions. *See Santillan*

16   *v. Verizon Connect, Inc*., No. 3:21-cv-1257-H-KSC, 2024 U.S. Dist. LEXIS 25902, at *28-29

17   (S.D. Cal. Feb. 13, 2024) (approving fees in wage-and-hour collective and class action

18   settlement that were 1/3 of the total settlement fund); *Anthony Ayala v. U.S Xpress Enterprises,*

19   *Inc. et al*., No. EDCV 16-137-GW-KKX, 2023 U.S. Dist. LEXIS 183259, 2023 WL 6559786, at

20   *7 (C.D. Cal. Sept. 15, 2023) (same); *Ochinero v. Ladera Lending Inc*., No.

21   SACV191136JVSADSX, 2021 U.S. Dist. LEXIS 192403, 2021 WL 4460334, at *8 (C.D. Cal.

22   July 19, 2021) (same).

23   Courts have historically awarded percentage fees in the range of 20% to 50% of the

24   common fund, depending on the circumstances of the case. Newberg § 14:6 (4th ed. 2008). "No

25   general rule can be articulated on what is a reasonable percentage of a common fund. Usually,

26   50% of the fund is the upper limit on a reasonable fee award from a common fund in order to

27   assure that the fees do not consume a disproportionate part of the recovery obtained for the

28   class, although somewhat larger percentages are not unprecedented." *Id*. Here, the Class Notice

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1   plainly disclosed that $466,666.67 of the Settlement would be allocated to pay attorneys' fees.

2   ECF No. 55-1, Pages 5, 12 of 15.  The fact that no Class Member objected to the Settlement in

3   general, or the attorneys' fees specifically, is an overwhelming indication that the attorneys' fees

4   and costs sought here are fair, reasonable, and appropriate.

5     A basic lodestar cross check is appropriate in a "percentage of the common fund" type

6   settlement that was achieved here: "Where the use of the lodestar method is used as a cross-

7   check to the percentage method, it can be performed with a less exhaustive cataloguing and

8   review of counsel's hours." *Schiller v. David's Bridal, Inc*., No. 1:10-CV-00616-AWI, 2012 WL

9   2117001, at *20 (E.D. Cal. June 11, 2012) (emphasis added); *In re Rite Aid Corp. Sec. Litig*.,

10   396 F. 3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither

11   mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig*., 497 F. Supp.

12   2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours

13   spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-

14   check."); *see also Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512, 89 Cal.

15   Rptr. 3d 615 (2009) (where lodestar used to cross-check percentage approach, documentation of

16   the lodestar figure is often submitted in summary or declaration form, without submission of

17   full time records). Regardless, whether a court applies the lodestar or the percentage method,

18   "we require only that fee awards in common fund cases be reasonable under the circumstances."

19   *Florida v. Dunne*, 915 F. 2d 542, 545 (9th Cir. 1990).

20     Here, Class Counsel submits a lodestar total of approximately $218,890.00, which does

21   not include anticipated work attending the fairness hearing and beyond final approval, including

22   monitoring the payment phase of the settlement and responding to Class Member inquiries. *See*

23   Conlon Decl., ¶¶ 10-12. Although this lodestar amount is lower than the percentage fee of

24   $466,666.67 requested, the lodestar amount is subject to an appropriate upward adjustment

25   based on a "lodestar multiplier" and the significant non-monetary relief attained by the Class as

26   a result of the uniform policy change. *See Fischel v. Equitable Life Assur. Society of U.S*., 307

27   F.3d 997, 1008 (9th Cir. 2002). A multiplier of 2.13 is reasonable given the quality of the

28   representation, benefit obtained for the class, complexity of the issues presented, and inherent

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1   risks of litigation. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 & n.6 (9th Cir. 2002)

2   (affirming multiplier of 3.65x in a common fund case and noting that vast majority of common

3   fund cases result in a multiplier of between one and four); *Lee v. Enter. Leasing Co.-West*, No.

4   3:10-CV-00326-LRH-WGC, 2015 U.S. Dist. LEXIS 64027, at *22-23 (D. Nev. May 15, 2015)

5   (approving a 2.07 multiplier). If including counsel's time to be spent on the anticipated work

6   such as attending the final fairness hearing and beyond final approval, the actual multiplier will

7   be lower than 2.13.

8       In sum, the one-third fee award requested is well justified here and within the range of

9   the fund awards approved in other cases, in light of the exceptional results obtained, the

10  efficiency with which the case was litigated, the experience and reputation of counsel, the risks

11  associated with litigating this action, the complexity of the issues presented, and the substantial

12  benefit to the class achieved.

13  **B. Class Counsel's Costs and Expenses Should Be Approved.**

14      Pursuant to the Settlement Agreement, Class Counsel seeks approval to recover up to

15  $20,000 from the Maximum Settlement Amount in litigation costs reasonably incurred. As of

16  this Motion, Class Counsel has incurred $14,728.25 in costs, including the filing fee, process

17  server's fee, mediator's fee, travel costs to attend the mediation and final approval hearing, and

18  informational campaigns, and expects to incur a modest amount of additional travel costs in

19  connection with the final approval hearing (not enough to cause the total costs to exceed

20  $20,000), which Class Counsel will certify to Simpluris once determined. *See* Conlon Decl. ¶

21  13. Class Counsel respectfully seeks an order approving the $14,728.25 in costs it has incurred

22  to date as well as the additional travel costs it incurs in connection with the final approval

23  hearing and certifies to Simpluris, subject to the $20,000 cap in the Settlement.

24  **VII.**  **FINAL CLASS AND COLLECTIVE CERTIFICATION SHOULD ALSO BE**

25  **GRANTED**

26      In the Preliminary Approval Order, the Court certified the FLSA Collective Subclass

27  and Rule 23 Settlement Subclass for settlement purposes. No Class Member has objected to

28  class certification or to the appointment of the Class Representative or Class Counsel. *See*

23

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

Butler Decl. at ¶ 16. For this reason, in addition to the reasons stated in the Parties' Renewed Joint Motion for Preliminary Approval (ECF No. 56, Pages 17-20, 29-32 of 33), the Court should grant final certification of the FLSA Collective Subclass and Rule 23 Settlement Subclass for settlement purposes. *See Santillan*, No. 3:21-cv-1257-H-KSC, 2024 U.S. Dist. LEXIS 25902, at *12 ("Given that no substantive issues concerning class certification have been raised since the Court granted preliminary approval of the settlement class, the Court . . . finds that final class and collective action certification for settlement is appropriate.").

## VIII. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) grant final approval to this Settlement and find that the Settlement is fair, reasonable, and adequate in all respects; (2) confirm the appointment of Brielle Meagher as Class Representative and approve the proposed Enhancement Award and Individual Claims Award; (3) confirm the appointment of Nicholas R. Conlon and Zijian Guan of Brown, LLC and Don Springmeyer of Kemp Jones, LLP as class counsel for the settlement class and approve their requests for attorneys' fees and litigation costs; (4) approve the proposed payment to Simpluris for administrative fees; (5) grant final class and collective certification for settlement purposes only; and (6) dismissed the lawsuit with prejudice pursuant to the Settlement.

DATED this 2nd day of May, 2024.

KEMP JONES, LLP

*/s/ Don Springmeyer*
Don Springmeyer, Esq.
(Nevada Bar No. 1021)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

Nicholas R. Conlon (*admitted pro hac vice*)
Zijian Guan (*admitted pro hac vice*)
Jason T. Brown (*admitted pro hac vice*)
111 Town Square Place, Suite 400
Jersey City, New Jersey 07310

*Attorneys for Plaintiff*

DATED this 2nd day of May, 2024.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Don Springmeyer*
Anthony L. Martin, Esq.
(Nevada Bar No. 8177)
10801 W. Charleston Blvd., Suite 500
Las Vegas, Nevada 89135

*Attorneys for Defendant*

1

## CERTIFICATE OF SERVICE

2   I hereby certify that on this <u>2nd</u> day of May, 2024, a true and correct copy of

3 **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF REVISED**

4 **CLASS AND COLLECTIVE ACTION SETTLEMENT** was served via the United States

5 District Court CM/ECF system on all parties or persons on the service list.

6

7

8   */s/ Pamela McAfee*
    An employee of Kemp Jones, LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com